## Dougherty *against* Dickey.

A treasurer's sale of unseated land is void, when it appears that the tax for which it was sold was actually paid, although the county commissioners misunderstood the payment and applied it to another object. The error of the officer will not deprive the owner of his land.

ERROR to the Common Pleas of *Butler* county.

This was an action of ejectment by Thomas Dickey against John Dougherty, for 100 acres of land. The plaintiff gave evidence of a regular assessment of the land as unseated, and a sale and conveyance of it by the treasurer to him for the payment of the taxes of 1822 and 1823, in the name of William Newell.

The land in dispute was a part of a survey of 305 acres in the name of John Wright, which had been divided into three parts

[Dougherty v. Dickey.]

and claimed by three different persons at one time. One part of 100 acres was claimed by John Negley, and the taxes of those years were paid by him. Mrs Collins, who claimed the other two parts, paid the taxes for the years 1822 and 1823, for 205 acres; but it seemed that in consequence of some misapprehension, the commissioners had assessed 405 acres of land in 100 acre tracts, and the taxes being paid for 305 acres only, 100 acres were returned as unseated, and a warrant issued to the treasurer for its sale, and it was sold in the name of William Newell. The court referred to the jury to say whether the taxes were paid for the land in dispute; instructing them that if they were, the plaintiff took nothing by his purchase; if they were not, he was entitled to recover.

*Gilmore* and *M'Candless,* for plaintiff in error.
*Purviance* and *Sullivan,* for defendant in error.

The opinion of the Court was delivered by

GIBSON, C. J.—The origin of the difficulty in this case, was the assessment of 405 acres, as the content of the warrant in the name of Wright, instead of 305. The assessor was misled probably by the derelict surveys of the settlers which had been run out in 400 acre tracts. But the taxes were in fact paid for all the land in the warrant, thus: Negley paid for the purparty of 100 acres in the name of Carragon; and Mrs Collins paid for 205 acres in the names of Wright the warrantee and Kenedy the settler, which included the purparty in the name of Newell, and made up the residue of the survey. And thus the treasury received all it had a right to exact. But as the officer had assessed 405 acres, and the treasurer had been paid for no more than 305, the commissioners took for granted that the odd hundred was the Newell purparty which had been separately assessed; and they consequently ordered it to be sold without suspecting that it had been included, assessed, and paid for, in the part of the survey claimed by Mrs Collins. Had the fact been known, we never should have heard of this action. But whatever their knowledge, there certainly was a double assessment of the Newell purparty, else the fiscal officers taxed what had no existence, and sold the Newell purparty to pay for it. Now, though the taxes on the Carragon purparty had been paid by Negley, and Mrs Collins had paid enough to satisfy the treasury for the residue of the survey, the Newell purparty included, the court, for some incomprehensible reason, left the jury to infer that she had applied part of her payment to the Carragon purparty, which she never claimed, and with which she had no concern, in order to leave a part of her own land uncovered and exposed to be sold. To say nothing of the absurdity of such an inference, there was not a spark of evidence to support it; and it was an error, therefore, to leave the fact to the jury. Neither was there a spark of evidence that the Carragon purparty,

[Dougherty v. Dickey.]

as the jury were left also to infer, had been doubly assessed. How could it be so, when it was neither separately assessed a second time, nor included in any larger body assessed in another name? Had it, instead of the purparty in the name of Newell, been included in the 205 acres in the names of Kenedy and Wright, and claimed by Mrs Collins, the inference that it was doubly assessed and doubly paid for would have been irresistible: but the reverse is the truth, and it was error to leave the inference to the jury. Mrs Collins owned, or at least claimed, the 205 acres, the residue of the survey taxed in the names of Kenedy and Wright, and containing the Newell purparty; and as the latter was separately taxed also in the name of Newell, it is as clear as demonstration can make it, that it was doubly assessed. But take it that her payment was misapplied by the receiving officer; and what is the consequence? Surely not that she is to be the sufferer; especially when the treasury has had its due without counting the purchase money received from the treasurer's vendee, which may even yet be restored. It would be a hard interpretation of the law that would allow the fiscal officers to retain a mispayment, the consequence of their own blunder, and sell the land of an innocent proprietor to make up the deficiency on the books which they had improperly, though innocently, created. She intended to pay in exoneration of her own land; and if they, however unintentionally, appropriated her payment to a tax due by another, their appropriation is void and the payment stands good as she intended it: and, the tax being thus paid, the purchaser would, according to the letter of the statute and several decisions on it, have no title. But there was, as I have said, not a spark of evidence of such appropriation. The question whether the land was unseated, seems to have been properly submitted; but the error in respect to the question of payment, is vital.

Judgment reversed, and *venire de novo* awarded.