# Earley *versus* Euwer.

1. After the lapse of forty years from the making of a treasurer's sale
of unseated lands for taxes, as proved by certificate of assessment and re-
turn of sale from the "land book for taxes on unseated lands," for the
years 1838–1840, the delivery of a treasurer's deed may be presumed ;
and where it is shown that unsuccessful search had been made for such
deed where it might naturally have been expected to be found, and that
the parties to this transaction are dead or removed from the state, sec-
ondary evidence of the contents of such deed is admissible, to show title
in an action of ejectment.

2.  The certificate from the "land book for taxes on unseated lands
of Ridgway township" admitted in evidence in this·case (printed below)
was a substantial compliance with the Act of April 19th 1843, sect. 2,
providing for the admission in evidence of "certified extracts from the
assessment books of unseated lands."

3. The court below instructed the jury as follows : "Land becomes
seated either by residence or cultivation and use for the purpose of mak-
ing profit from the same by the owner or persons under him, and it can-
not be assessed as unseated even by consent of the owner." *Held,* under
the circumstances of this case, to be a correct instruction.

February 12th 1883.· Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT and GREEN, JJ.   CLARK, J., absent.

ERROR to the Court of Common Pleas of *Elk county :*   Of
January Term 1883, No. 122.

Ejectment, by Daniel Euwer, et al., against C. R. Earley,
et al., for a tract of land in Ridgway township, containing 140
acres.   Plea, not guilty.

On·the trial, before BROWN, P. J., the plaintiffs, having
shown title out of the commonwealth, based their claim upon
an assessment of the land in dispute for taxes for 1838 and 1839,

[Earley *v.* Euwer.]

as " unseated;" and a sale by the treasurer in 1840, and a deed made in pursuance thereof, to one Levi G. Clover, the plaintiffs' grantor. The plaintiffs offered in evidence the following certified extract from the assessment book :—

　　　　　　　　　" Commissioner's Office of the
　　　　　　　County of Jefferson, Brookville, Pa.

" Among the records of assessments for taxes on unseated lands, and returned to the treasurer for collection on the land book for said county, in said office, is found the following :

| War. | Yr. | Warrantee. | Dr. | Acres. | Rt. | Val. | Coty. | St. | Rd. | Sc. |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1838 | Kennedy, William B. | | 130 | 7 | 97.50 | 48 | | 48 | 29 |
| | 1839 | | | 130 | " | 97.50 | 58 | | 97 | 53 |

| | Contra. | Cr. | Coty. | St. | Rd. | Sc. |
|---|---|---|---|---|---|---|
| 1840 | Sold to L. G. Clover & Deed audited. | | 48 | | 48 | 29 |
| 1840 | "　　"　　" audited. | | 58 | | 97 | 53 |

" STATE OF PENNSYLVANIA, ⎫ ss:
　　Jefferson County.　　⎭

I, T. H. Wilson, clerk of the commissioners of said county, do hereby certify that the foregoing extracts made from the land book for taxes on unseated lands of Ridgway township, returned to the treasurer for collection, are true copies of said entries and sales for the taxes assessed and returned upon said lands as mentioned, as appears by said books of said county.

　　　　　" In testimony whereof I have hereunto set my hand
　　　　　　and affixed the seal of the said county at Brook-
[SEAL]　　ville, Pa., this 17th day of March, A. D. 1881.

　　　　　　　　　　　T. H. WILSON,
　　　　　Clerk of the Com. of Jefferson county, Pa."

Objected to ; objection overruled. Exception.

No deed from the treasurer to Levi G. Clover was produced, but the plaintiffs having shown that search was made for said deed among the title papers of Daniel Euwer where the remainder of the deeds were found and in whose custody it was natural to expect it would be found ; and that all the other parties who might have held the deed in the line of their title were dead, offered secondary evidence of its contents. Objected to.

THE COURT.—" Whether a treasurer's deed to L. G. Clover, was, in fact, made and delivered, is a question of fact for the determination of the jury under the evidence. Assuming that the jury should find from the evidence, that such a deed was made, then the question that we have is whether—in the absence of the deed itself—there has been vigilance used, such an effort made to procure the original as to let in secondary evidence of its contents. The treasurer's sale was made to Clover in 1840 ;

[Earley *v.* Euwer.]

it appears from the testimony that Clover has been dead for twenty years or more; that Hoover, of Franklin, who was his administrator, is dead, his administrator or executor being Mr. Dodd, now residing in the city of New York; that John J. Y. Thompson is dead, has been so for some time; James L. Gillis, a resident of Iowa, is dead. Tak ing all these matters into consideration, we have come to the conclusion that the evidence is sufficient to let in secondary evidence of the contents of the treasurer's deed, and so rule." Objection overruled. Exception.

The defendants claimed title under a treasurer's sale of the land to the commissioners of Elk county for taxes of the years 1860 and 1861 and a sale and deed by said commissioners to the defendants. It appeared that the land was then assessed as " seated," but the defendants controverted the seated character of the land, and proved, by witnesses, in substance, that prior to and during the years 1860 and 1861, there was a cabin on the land which had been occupied temporarily by different parties who went on the land to cut timber or bark; that there was not more than half an acre cut, and scarcely any that could be called cleared; there was a little patch round the house, in which " some person, may be, would plant a few hills of potatoes round the stumps, or a hill or two of cucumbers; different persons would live there and go away; there never was any farming there, so long as I knew it, prior to 1863; and from 1859 to October 1860, nobody lived there."

The plaintiffs presented, inter alia, the following point :—

3. Land becomes seated, either by residence or cultivation and use for the purpose of making profit from the same by the owner or persons under him and it cannot be assessed as unseated even by the consent of the owner. Affirmed. Exception.

The court instructed the jury that the plaintiffs had shown title, unless they found that the land was in fact unseated at the time of its assessment in 1860 and 1861 : that if the land was then seated, the treasurer had no jurisdiction to sell it to the commissioners, and the deed from the commissioners to the defendants passed no title. The court defined seated and unseated land, and further instructed the jury that " if the land was, before the assessment of taxes in 1860 and 1861, seated land, either by actual residence or cultivation, then it is incumbent upon the defendants to satisfy you by affirmative evidence that at the time of the assessment, it had been permanently abandoned as a place of residence, and that the cultivated portions had been permanently abandoned or permitted to lapse into a state, in substance, like unto a state of nature."

Verdict and judgment for the plaintiffs. The defendants

[Earley *v*. Euwer.]

took this writ of error, assigning for error, the admission in evidence of the certified extract of assessment for the taxes of 1838 and 1839 ; the admission of secondary evidence of the alleged treasurer's deed to Levi G. Clover ; and the affirmance of the plaintiff's third point, as above given.

*John G. Hall* (*Rufus Lucore* and *C. H. McCauley* with him), for the plaintiffs in error, argued that the certificate of the extract of assessment, was insufficient under the Act of April 19th 1843 (Purd. Dig. 629 pl. 47) and that the secondary evidence of the treasurer's deed to Clover was improperly admitted, no loss or sufficient search for the original having been proved. Further, that while the affirmance of the plaintiff's third point may seem to be in accordance with the decisions, yet, as applied to the notorious facts in Elk and other similarly situated counties, it was bad law ; that the court should take notice of and draw a line to meet the fact, that in said county, there has been in past years and is still a large demand for bark for tanneries, to supply which, vast bodies of land are entered upon temporarily. and perhaps improved to a limited extent, by the building of shanties, planting vegetables, etc., whereupon the land is assessed as seated : but afterwards the occupation is wholly abandoned, and no means exist of collecting the taxes as on seated land. If it is then treated as unseated, and sold at treasurer's sale, the owner claims that having been once seated and assessed, as such, the sale is void. This is a case of that character, and is a fitting opportunity for this court to review and mould the application of the law to meet the justice of the case.

*W. L. Corbett* and *Geo. A. Rathbun*, for the defendants in error.

Chief Justice MERCUR delivered the opinion of the court February 26th 1883.

We think the certified extract from the book of assessment, containing a copy of the taxes assessed on the tract of land, was a substantial compliance with the requirement of the statute. It is original evidence, not only of all the facts therein contained, but also of those presumably flowing therefrom. The registry in the prothonotary's office of the acknowledgment of a sheriff's deed is original evidence : Stonebreaker *v*. Short, 8 Barr 155. The acknowledgment of a deed made by a treasurer of unseated lands sold for the non-payment of taxes is also a judicial act, and like effect should be given to it as to the acknowledgment of a deed made by the sheriff : Duff *v*. Wynkoop, 24 P. F. Smith 300. The statute does not prescribe the precise form in which a book of assessment or of sale shall be kept ;

[Spring Run Coal Co. *v.* Tosier.]

but leaves it to the treasurer and commissioners to determine. After the lapse of forty years from the making of the treasurer's sale, the delivery of the deed may well be presumed. Prior to the Act of 14th March 1846, no statute authorized the recording of a treasurer's deed in the office for recording deeds. The record entry in the prothonotary's office was held to be a sufficient recording, and the deeds themselves were not always preserved with much care. In this case it was shown that the parties to the transaction were dead, and their administrators were either dead or had left the country. No known depositary of the deed was shown. In view of the great lapse of time, and the evidence of some search made for the deed, we cannot say the court erred in admitting parol proof of its contents.

The affirmance of the third point submitted by the defendant in error, was manifestly in view of evidence indicating some degree of permanency in residence or cultivation. So understanding the point and the answer, they are correct : Hathaway *v.* Elsbree, 4 P. F. Smith 498.

Judgment affirmed.