## Schreiber v. Moynihan.

*Tax sale—Abandonment of purchase by county.*

Where a county purchases land at a tax sale, and after the purchase, the land is not charged by the commissioners with county and road taxes in the manner provided by section 5 of the Act of March 13, 1815, but it is assessed as before, and taxes are levied from year to year, and the land is again sold for taxes and purchased by a private individual, the county will be deemed by such assessments and sale to have abandoned its purchase at the earlier sale.

*Tax sale—Identity of land—Assessments—Province of court and jury.*

Where land is purchased by a county, and subsequently assessments are made, followed by a second tax sale, the question whether the assessments were on the land which was bought by the county at the first sale, is a question of fact for the jury.

Argued Oct. 11, 1900. Appeal, No. 3, Oct. T., 1900, by defendant, from judgment of C. P. Venango Co., Jan. T., 1898, No. 26, on verdict for plaintiff, in case of Peter Schreiber v. Andrew Moynihan. Berore McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Ejectment for land in Cornplanter township. Before CRIS-WELL, P. J.

At the trial it appeared that the plaintiff, Peter Schrieber, leased the land in controversy from David Thompson, who claimed it under tax sales made in 1888 and 1890. Defendant claimed the land by purchase from the county in 1889. The county purchased the land at a tax sale in 1884. Plaintiff claimed that the county had abandoned its purchase by failing to comply with the provisions of section 5, of the act of March 13, 1815, which directed as follows: " It shall be the duty of the commissioners to provide a book, wherein shall be entered the name of the person as whose estate the same shall have been sold, the quantity of land, and the amount of taxes it was sold for, and every such tract of land shall not thereafter, so long as the same shall remain the property of the county, be charged in the duplicate of the proper collector; but for five years next following such sale, if it shall so long remain unredeemed, the commissioners shall, in separate columns in the same book, charge

every such tract of land with reasonable county and road tax, according to the quality of said land, not exceeding in any case the sum of six dollars for every hundred acres."

The court charged in part as follows:

[Now, we say to you as a matter of law, gentlemen, that if the land assessed to Foster in 1886 and 1887, this 233 acres, being tracts 255 and 256, and being the same quantity of acres and numbers of tracts indicated in the writ describing the land in controversy, if the assessment of that land was intended to cover the land in controversy, then by permitting the land to go back on the assessment books and be charged with taxes for the years 1886 and 1887, and permitting it to be sold, the county forfeited any title it acquired under its purchase in 1884.] [1] That would wipe out the purchase made by the county in 1884. In 1888, as we have said, the record shows that this land was purchased by David Thomson. It was assessed in 1888 and 1889, and in 1890 it was purchased by Thomas J. Sheridan. Sheridan afterwards assigned his interest to David Thomson, so that as the record stands it is practically the same as though it had been purchased by Thomson again in 1890. Now, notwithstanding the fact that this land was charged with taxes while it ought to have been held by the county, if it was the same land, the county in 1889 sold this 250 acres assessed "Unknown," to Mr. Thomas Maher and Mr. Moynihan, Mr. Moynihan subsequently purchasing the interest of Mr. Maher, and therefore acquiring all the interest formerly vested in the county. But, as we say, if you find that this land assessed to Foster is the same land that was purchased by the county, or described in the assessments on which the purchase by the county was made, why then the county at that time, on December 10, 1889, had no title to sell, and consequently Mr. Moynihan and Mr. Maher obtained no title.

Now, there is a good deal of this case, gentlemen, but it practically comes down to identifying the assessment of this land assessed in the name of Foster, J. P. G., tracts 255 and 256, for the years 1886 and 1887. If that was intended for the land in controversy, and you are warranted in finding that it was, the correct number of acres and the correct tract num-

bers being given, if you find that to be the land in controversy, then we say to you, you would be warranted in finding a verdict for the plaintiff in this action for the land described in the writ, because, although the defendant is in possession, he has exhibited here the only title which he has, and if you find the facts as indicated, why then he has no title at all and has no right to the possession, and we instruct you that he cannot raise any question as to the regularity of the tax sale under which the plaintiff claims. Those tax sales, if you believe the testimony of Mr. Rheem, were made with the knowledge and consent of Mr. Foster, the former owner. He is not objecting, he raises no question as to those sales, and we do not understand that Mr. Moynihan, if you find the facts as indicated, can raise any question as to the regularity of those sales.

Now this is the conclusion we have come to. There is not much controversy as to the facts. The character of the suit is such that the court must assume largely the burden of it, and we have indicated to you as clearly as we can our opinion of the law upon the facts. [We submit to you, however, the question as to what lands were intended to be covered by these assesssments, what lands were covered as a matter of fact, and if you find, as we said before, that this assessment in the name of Foster in the years 1886 and 1887 for the 233 acres is an assessment of the land in controversy, why, under the undisputed evidence the plaintiff would be entitled to recover, because the defendant would have no title.] [2]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (1, 2) above instructions, quoting them.

*William J. Breene,* with him *Peter Wilbert, J. H. Osmer, A. R. Osmer* and *N. F. Osmer,* for appellant.

*Carl I. Heydrick,* with him *C. Heydrick* and *John L. Nesbit,* for appellee.

OPINION BY MR. JUSTICE FELL, January 7, 1901:

The land for which ejectment was brought was sold for taxes in 1884, purchased by the county, and sold by the com-

missioners to the defendant in 1889. After the purchase by the county in 1884, the land was not charged by the commissioners with county and road taxes as provided by section 5 of the act of March 13, 1815; but it was assessed as before, and taxes were levied from year to year. It was sold for taxes in 1888 and again in 1890. Under these sales the plaintiff claims title.

The assessment of the land after the sale in 1884, and its sale in 1888 and 1890 for taxes, was clearly an abandonment by the county of its purchase in 1884: Hunter v. Albright, 5 W. & S. 423; Diamond Coal Co. v. Fisher, 19 Pa. 267; Cobb v. Barclay, 9 Pa. Superior Ct. 573. We find nothing in the testimony which takes the case out of the operation of this rule. Whether the assessments from 1885 to 1889 were on the same land which was sold for taxes in 1884 was a question of fact for the jury; Woodside v. Wilson, 32 Pa. 52.

The judgment is affirmed.