Michael G. **LUTZ, Lodge No. 5 of the Fraternal Order of Police, Through its Trustee Ad Litem, John McNesby; Christine O'Shea, Nadine Crawford, Kenneth Fleming and Edward Spangler**

v.

**CITY OF PHILADELPHIA and Philadelphia Newspapers, LLC and Wendy Ruderman**

**Appeal of: City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued May 18, 2010.

Decided Oct. 22, 2010.

Eleanor N. Ewing, Philadelphia, for appellant.

Marc L. Gelman, Philadelphia, for appellees, Michael G. Lutz, Lodge No. 5 of the Fraternal Order of Police, Through its Trustee Ad Litem, John McNesby; Christine O'Shea, Nadine Crawford, Kenneth Fleming and Edward Spangler.

Christopher H. Casey, Philadelphia, for appellees, Philadelphia Newspapers, LLC and Wendy Ruderman.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Philadelphia appeals an order of the Court of Common Pleas of Philadelphia County granting, in part, a preliminary injunction in favor of the Fraternal Order of Police, Lodge No. 5 (Union). The injunction effectively prohibited the City from granting a news organization's request for access to police grievance arbitration awards under the Right–to–Know Law.[1] Because Union failed to demonstrate the "clear right to relief" necessary for a preliminary injunction, we will reverse the trial court's order.

In July 2009, Wendy Ruderman, an employee of Philadelphia Newspapers LLC, submitted a request to the City under the Right–to–Know Law to review "all arbitration awards, including written decisions by arbitrators, pertaining to police officers in the years 2005, 2006, 2007, 2008 through the present." Reproduced Record at 119 (R.R. ____).[2] The City reviewed Philadelphia Newspapers' request and identified 187 arbitration decisions of varying lengths and formats that were subject to the request. The City planned to provide redacted copies of these documents.

Upon learning of the City's plan, Union filed a complaint for declaratory judgment and petition for injunctive relief with the trial court.[3] Union sought, *inter alia*, an order preliminarily enjoining the City from disclosing any portion of any arbitration decision in response to Philadelphia Newspapers' Right–to–Know request. Union averred that the documents contain sensitive information related to the function, performance and duties of police officers, which, if released to the public, could jeopardize the safety of officers and their ability to effectively perform their duties. Union further averred that the documents may contain personal information about individual officers and their off-duty conduct which, if released to the public, could threaten the security of the officers and their families. Union believes that the arbitration decisions are the private property of the City and Union, and that the real interested individuals, *i.e.*, the grievant police officers, have no means to restrict access to the information in the rec-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101—67.3104.

2. The records at issue are the written decisions issued by arbitrators pursuant to a grievance procedure established in the collective bargaining agreement between the City and Union. Arbitration hearings are closed to the public. Only designated representatives of the City and Union are permitted to attend and participate. R.R. 120.

3. Union had no other recourse since it could not directly seek administrative relief under the Right–to–Know Law. Philadelphia Newspapers, as the requester, was the only potentially directly aggrieved party.

ords or appeal a decision by the City to release any or all of that information.

On August 31, 2009, the trial court held a hearing on Union's request for injunctive relief. Philadelphia Newspapers sought, and was permitted, to intervene. No witnesses testified. However, the trial court directed the City to provide it with copies of the grievance arbitration decisions at issue. At a second hearing on September 14, 2009, John McGrody, the Union's vice president in charge of arbitration and grievance procedure, testified on behalf of Union.

McGrody offered several reasons to support Union's position that no portion of an arbitration decision should be released to the public. For example, the American Arbitration Association has not adopted guidelines for the format of an arbitrator's written decision. As a result, some arbitrators may include facts in the actual award, while others may simply state "grievance denied." Because of this inconsistency in the factual content of the decisions, Union members are concerned about the inadvertent release of factual information that could jeopardize their own or their families' personal safety. Such information includes the officers' home addresses, names of their family members, ages and dates of birth of their children, and what schools their children attend. McGrody stated that "a lot of our police officers have received threats over the years, and those threats . . . have extended to the families of police officers." R.R. 52. McGrody explained that arbitration decisions related to staffing issues can contain sensitive information about manpower, deployment and work hours of specific groups of officers, such as narcotics and undercover units. Further, if a grievance relates to financial irregularities, then an officer's date of birth, social security number and other identifying factors may be placed into evidence. Finally, McGrody posited that grievances may involve discipline for off-duty conduct that is unrelated to an officer's employment by the City.

On September 28, 2009, the trial court granted partial injunctive relief in favor of Union. The trial court ordered the City to comply with Philadelphia Newspapers' request for records by providing a summary of each arbitration award that included only the following information:

(1) the date the arbitration award was issued;

(2) the name of the arbitrator; and

(3) whether the grievance was affirmed or denied.

The order enjoined the City from releasing all other information, including the name of the police officer and any description of the nature of the grievance or the remedy awarded.[4]

The trial court reasoned that its injunction was tailored to prevent disclosure of information protected from public access by several provisions in the Right–to–Know Law. First, the trial court cited the exemption in Section 708(b)(7) of the Law, for "[w]ritten criticisms of an [agency] employee," and "[g]rievance material, including documents related to discrimination or sexual harassment." 65 P.S. § 67.708(b)(7). Next, the trial court cited the exemption in Section 708(b)(8) of the Law for "an exhibit entered into evidence at an arbitration proceeding, a transcript of the arbitration or the opinion." 65 P.S. § 67.708(b)(8). Finally, the trial court cit-

---

4. The trial court entered the injunction without prejudice to Philadelphia Newspapers' right to appeal the City's response to the Office of Open Records in accordance with the Right–to–Know Law. Philadelphia Newspapers has exercised that right. The Office of Open Records has stayed the matter pending a decision by this Court in the present action.

ed Section 708(b)(1)(ii), which exempts release of requested records that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual" police officer and his or her family. 65 P.S. § 67.708(b)(1)(ii). The trial court reasoned that the vagueness of Philadelphia Newspapers' request, the lack of a standard format in the arbitration decisions, and the City's willingness to release information without Union's involvement, created a potential risk to the police officers' constitutional right of privacy identified in *Pennsylvania State Education Association ex rel. Wilson v. Department of Community and Economic Development, Office of Open Records*, 981 A.2d 383 (Pa.Cmwlth.2009), *affirmed*, 2 A.3d 558 (2010) *(PSEA)* (single-judge opinion preliminarily enjoining Commonwealth from disclosing home addresses of public school employees).

■ The City now appeals the trial court's order, arguing that Union failed to satisfy the prerequisites for a preliminary injunction. More specifically, the City argues that Union did not demonstrate a clear right to relief and a reasonable likelihood that it would prevail on the merits. We agree.

■ In reviewing an order granting or denying a preliminary injunction, we apply a deferential abuse of discretion standard. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 573 Pa. 637, 645, 828 A.2d 995, 1000 (2003). "Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." *Lee Publications,*

*Inc. v. Dickinson School of Law*, 848 A.2d 178, 183 (Pa.Cmwlth.2004) (quoting *Roberts v. Board of Directors of School District of City of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975)). A trial court has "reasonable grounds" for a preliminary injunction where each prerequisite has been satisfied. *Lee Publications, Inc.*, 848 A.2d at 189.[5] The prerequisites for a preliminary injunction are well established. The petitioner must prove that:

(1) an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

(2) greater injury would result from refusing an injunction than from granting it, and the issuance of the injunction will not substantially harm other interested parties;

(3) an injunction will properly restore the parties to their status as it existed prior to the alleged wrongful conduct;

(4) the activity the petitioner seeks to restrain is actionable, the right to relief is clear, and success on the merits is likely;

(5) the injunction is reasonably suited to abate the offending activity; and,

(6) an injunction will not adversely affect the public interest.

*Summit Towne Centre, Inc.*, 573 Pa. at 646–47, 828 A.2d at 1001.

The Right–to–Know Law establishes that "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record" unless exempted by operation of law or privilege. Section 305(a) of the Right–to–Know Law, 65 P.S. § 67.305(a). Accordingly, "[u]nless otherwise provided by law,

---

**5.** "For a preliminary injunction to issue, *every one* of these prerequisites must be established; if the petitioner fails to establish any one of them, there is no need to address the others."

*Id.* (emphasis in original) (quoting *County of Allegheny v. Commonwealth*, 518 Pa. 556, 560, 544 A.2d 1305, 1307 (1988)).

a public record ... shall be accessible for inspection and duplication in accordance with [the Right–to–Know Law]." Section 701(a) of the Right–to–Know Law, 65 P.S. § 67.701(a). From this broad universe of accessible public records, Section 708 identifies discrete categories of information that are exempted from disclosure. The trial court focused on three of these Section 708 exemptions in its analysis. We consider them *seriatim.*

The first and most obviously relevant exemption pertains to records related to labor arbitration proceedings. Section 708(b)(8) of the Right–to–Know Law exempts the following records from public access:

> In the case of the arbitration of a dispute or grievance under a collective bargaining agreement, an exhibit entered into evidence at an arbitration proceeding, a transcript of the arbitration *or the opinion. This subparagraph shall not apply to the final award or order of the arbitrator in a dispute or grievance procedure.*

65 P.S. § 67.708(b)(8)(ii) (emphasis added).

The trial court cited the first sentence in the above provision and concluded that "[t]he inconsistent format of the Arbitration decisions requires a clear and precise redaction as set forth in this court's Order." Trial Court Opinion at 5. However, the trial court completely disregarded the second sentence of Section 708(b)(8)(ii), which specifies that the exemption for an arbitrator's opinion does not apply to "the final award or order of the arbitrator." 65 P.S. § 67.708(b)(8)(ii). This was error by the trial court. The legislature intended access more meaningful than a "scorecard" of the City's wins and losses in grievance arbitrations, which is the only access permitted under the trial court's preliminary injunction.[6] This narrow access runs afoul of the well settled tenet that the Right–to–Know Law's "exemptions from disclosure must be narrowly construed" because it is remedial legislation. *Bowling v. Office of Open Records,* 990 A.2d 813, 824 (Pa. Cmwlth.2010).

Echoing the trial court's rationale, Union argues that because each arbitrator uses his or her own format in drafting a decision, it will be impossible to separate the "opinion," which is exempt from disclosure, from the "final award or order" that is open to access. Union believes that the inevitable consequence will be disclosure of sensitive information contained in the award, such as officers' home addresses, social security numbers, information about spouses and children, and police staffing information. We do not agree. Our review of the arbitration awards reveals that the final award or order of the arbitrator is usually separated from the opinion, either on its own page or in a stand alone paragraph. There may be cases where that boundary is blurred, or factual information is included in the legal conclusions and relief awarded. Nevertheless, Union does not explain why the City will be unable or unwilling to redact protected and sensitive information, such as information about family members, from the requested award.

Indeed, the Right–to–Know Law directs agencies to use redaction in appropriate circumstances. Section 708(b)(6)(i) of the Right–to–Know Law, 65 P.S. § 67.708(b)(6)(i), exempts the following

---

6. A sample entry from the list compiled by the City and supplied to Philadelphia Newspapers pursuant to the trial court's order reads in full: "2007 [year]; Coleman [name of arbitrator]; 18–Dec–07 [date of disposition]; City win [disposition]." Appellant's Brief at 18 n.8.

"personal identification information" from access by a requester:

(A) A record containing all or part of a person's Social Security number, driver's license number, personal financial information, home, cellular or personal telephone numbers, personal e-mail addresses, employee number or other confidential personal identification number.

(B) A spouse's name, marital status or beneficiary or dependent information.

(C) The home address of a law enforcement officer or judge.

65 P.S. § 67.708(b)(6)(i). Subsection (b)(6) goes on to state that "[n]othing in this paragraph shall preclude the release of the name [and] position ... of a public official or an agency employee," however *"[a]n agency may redact* the name or other identifying information relating to an individual performing an undercover or covert law enforcement activity from a record." 65 P.S. § 67.708(b)(6)(ii), (iii) (emphasis added). The Law also exempts records maintained by a law enforcement agency if disclosure of those records could jeopardize public safety or preparedness or public protection activity. Section 708(b)(2) of the Right–to–Know Law, 65 P.S. § 67.708(b)(2).[7]

In short, the legislature has provided specific guidance on the types of information a responding agency should redact, and it has directed State and local agencies across the Commonwealth to redact such sensitive confidential information from public records every day. Union presumes that the City is unable or unwilling to comply with the requirements of Section 708(b) or that it will provide more than the final award of a grievance arbitrator. There is no basis for Union's fears.

■ The trial court pointed to the exemption in Section 708(b)(7) for certain types of employee records, such as letters of reference or recommendation, performance ratings or reviews, results of civil service tests, "[w]ritten criticisms of an employee," "[g]rievance material, including documents related to discrimination or sexual harassment," and "[i]nformation regarding discipline, demotion or discharge...." 65 P.S. § 67.708(b)(7)(vi), (vii), (viii). This exemption relates to records found in an employee's personnel file, not to formal legal adjudications. Assuming, *arguendo*, that an arbitration award can be considered "grievance material" or "information regarding discipline, demotion or discharge," Section 708(b)(7)(viii) also advises that the exemption for such material "shall not apply to the final action of an agency that results in demotion or discharge." 65 P.S. § 67.708(b)(7)(viii). In any case, whatever Section 708(b)(7) means, it is controlled by the very specific command in Section 708(b)(8)(ii) that the public be given access to a "final award or order" of an arbitrator. 65 P.S. § 67.708(b)(8)(ii).

■ Finally, we consider the trial court's conclusion that releasing arbitration awards would violate Section 708(b)(1)(ii) of the Right–to–Know Law, which exempts from disclosure

[a] record, the disclosure of which ... would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

---

**7.** Section 708(b)(2) exempts from access by a requester

[a] record maintained by an agency in connection with ... law enforcement or other public safety activity that, if disclosed,

would be reasonably likely to jeopardize or threaten public safety or preparedness or public protection activity....

65 P.S. § 67.708(b)(2).

65 P.S. § 67.708(b)(1)(ii). The trial court noted that this Court's preliminary injunction in *PSEA* supported the trial court's injunction.

We disagree with the trial court's reliance upon the so-called personal security exemption in Section 708(b)(1)(ii), which prohibits a disclosure that "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii). Union's sole witness, John McGrody, testified generally that police officers and their families are frequently threatened. He then speculated that access to arbitration awards will, *ipso facto*, pose a risk to the officers' safety and privacy. This testimony fell far short of showing a substantial and demonstrable risk of physical harm to even one individual. More than mere conjecture is needed.

As for this Court's single-judge opinion in *PSEA*, we find that case has limited application here. *PSEA* involved a request for access to the home addresses of public school employees, which are not specifically exempted under the Right-to-Know Law. By contrast, all of the sensitive information identified by Union, including the home addresses of law enforcement officers, is expressly exempt from public access in Section 708(b) of the Law.

All of the sensitive information Union has identified as requiring protection is already expressly exempted from disclosure under Section 708(b)(2) and (6) of the Right-to-Know Law, 65 P.S. § 67.708(b)(2), (6). It is the City's burden to redact this information. Union does not explain why it believes the City will abrogate this responsibility and thereby place its police officers and their families at risk. We must presume the opposite, *i.e.*, that an agency will act in accordance with law. *See Albert v. Lehigh Coal and Navigation Co.*, 431 Pa. 600, 610 n. 5, 246 A.2d 840, 845 n. 5 (1968) ("There is a *prima facie* presumption of the regularity of the acts of public officials which exists until the contrary appear . . . .").

For all of the foregoing reasons, we hold that Union did not demonstrate a clear right to preliminary injunctive relief.[8] Accordingly, we reverse the trial court's order granting the preliminary injunction.

### *ORDER*

AND NOW, this 22nd day of October, 2010, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated September 28, 2009, is REVERSED.

---

8. It bears noting that the trial court likely exceeded its authority by ordering the City to create a log of its wins and losses in arbitration. If, as the City contends in its reply brief, the requested information does not presently exist in that form, the trial court's injunction violates Section 705 of the Right-to-Know Law, which states:

When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record. 65 P.S. § 67.705.