## Commonwealth v. Kipp

*James A. Kudasik,* for appellant.
*Lisle A. Zehner, III,* for Commonwealth.

COFFROTH, *P.J.,* November 17, 1980—This is an appeal from recall of appellant-licensee's operating privilege for incompetency, under the Vehicle Code, 75 Pa.C.S.A. § 1519(c), which provides as follows:

"(c) Recall of operating privilege.—The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle. Any person aggrieved by recall of the operating privilege may appeal to the court of common pleas in the manner provided in section 1550 (relating to judicial review)."

## FACTS

Appellant is 72 years old, born November 1, 1908, is married and resides with her husband, serves as an arts and crafts teacher for senior citizens several days a week, is an active homemaker, is intelligent

and mentally alert, and is also physically alert and in good health except for some hypertension and the seizure episodes herein detailed which led to the recall.

During the night before Thanksgiving Day 1976, while sleeping, appellant had a seizure of some sort which caused her body to stiffen and her eyes to roll; her husband noticed this, aroused her and got her out of bed; after being awakened, she was conscious, ambulatory and aware of her surroundings but did not have her mental alertness; the condition soon passed. The seizures later came about once every month or two, always at night while sleeping, and the remedy was the same: awakening her from sleep, getting her out of bed and ambulation. Appellant went to her physician, was thoroughly examined by several physicians and at two hospitals, and no specific disorder was found; the diagnosis was "seizure disorder." Phenobarbitol and Dilantin were prescribed twice a day as drug therapy which reduced the frequency of seizure to once every two or three months, and she has had no seizure since March 11, 1979. She has never lost consciousness from the seizure (contrary to the statement in the notice of recall that she had "a condition causing lapses of consciousness"), all of the seizures have occurred at night while sleeping, none occurred in the daytime or while operating her car which she drives only to work about 2 miles away from home and which she needs in her work. Throughout her long years of driving, appellant has had no accidents and no vehicle violations.

The Commonwealth's evidence consists only of the certified record which contains: (1) the official notice of recall, (2) the physical examination certificate, and (3) appellant's driving record. The

Commonwealth produced no witnesses. Appellant and her husband testified.

## DISCUSSION

Our initial concern is the burden of proof. Under the prior Vehicle Code of April 29, 1959, P.L. 58, 75 P.S. § 101 et seq., as amended, the Commonwealth had the burden of proof by a preponderance of evidence on all essential issues in a motor vehicle license appeal. See Walker License, 55 D. & C. 2d 395, 26 Somerset 140 (1970). Judicial review in such cases is now governed by section 1550 of the new Vehicle Code of 1976; subsection (c) thereof provides as follows: "(c) Jurisdiction and proceedings of court. — The court . . . shall . . . set the matter for hearing . . . upon 30 days written notice to the department and to determine whether the petitioner is in fact the person whose operating privilege is subject to the recall, suspension, cancellation or revocation."

That provision suggests that the only issue on appeal is the identity of appellant; however, such a narrow interpretation would deny the licensee a hearing on the essential issues of the case and would be a violation of constitutional due process of law; accordingly, the Commonwealth continues to bear the burden of proof on all issues as under the former code. See Com. v. Quinlan, 47 Pa. Commonwealth 214, 408 A. 2d 173 (1979).

In recalling appellant's operator's license, the Department acted under code section 1519(c) previously quoted, on the ground that appellant's "incompetency has been established under the provisions of this chapter." That language suggests that the Commonwealth's burden of proof in an incompetency appeal is merely to show that "incompe-

tency has been established" in accordance with the procedural "provisions of this chapter," as distinguished from proof of the incompetency itself. The procedural provisions of the chapter (Code Chapter 15) for departmental establishment of incompetency are contained in sections 1518 and 1519, principally section 1519(a), which provides as follows:

"(a) General rule. — The department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examination to be made or who shall designate any other qualified physician. The licensed driver or applicant may cause a written report to be forwarded to the department by a physician of the driver's or applicant's choice. Vision qualifications shall be determined by an optometrist or ophthalmologist. *The department shall appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or the applicant to drive.*" (Emphasis supplied.)

But we construe the Commonwealth's burden of proof as requiring production of legally competent evidence to establish the specific disorder or disability which is alleged to make appellant incompetent to drive. Compare Com. v. Quinlan, supra. Accordingly we must evaluate the evidence as proof of procedural regularity and as proof of substantive incompetency.

## PROCEDURAL REGULARITY

As to the procedure followed by the department in determining appellant's incompetency to drive, the recall notice states: "This decision has been made

by comparing your physician's report with the standards recommended by our Medical Advisory Board and adopted by this Department." Although the Commonwealth has not furnished or cited any such Medical Advisory Board standard, we find them in 67 Pa. Code § 157.5 as published in 9 Pa. Bull. 1631 (1979), of which we take judicial notice.[1]

Virtually all of those standards are substantive in nature, defining incompetency for Vehicle Code purposes; the only procedural provision appears in section 157.5(b) which states that a person afflicted with certain previously enumerated conditions "may be required to undergo a special driving examination" and "may be restricted to driving a vehicle equipped in a manner prescribed by the examining licensed physician or by the Department;" none of those optional procedures is relevant here.

It appears, therefore, that the Department's procedure in having appellant's physician's report compared with the board's standards to determine incompetency is proper, provided that a properly qualified person does the comparing; on that point, code section 1519(a), supra, requires the Department to "appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or ap-

---

1. Code section 1517(b) states: "The Board shall formulate rules and regulations for adoption by the Department on physical and mental criteria including vision standards relating to the licensing of drivers under the provisions of this chapter [15]." See Com. v. Byrd, 41 Pa. Commonwealth Ct. 38, 44, 399 A. 2d 425 (1979), affirming 39 Somerset 213 (1977), decided on other grounds, recognizing "the distinction in administrative law between the weight accorded an agency rule promulgated under a grant of legislative power by the legislature and the force of a rule promulgated under the interpretive rule-making power."

plicant to drive." There is nothing in the present record evidencing any such appointment or that the determination of competency here was made by the appointed person or that the person who made the determination was "qualified" as code section 1519(a), supra, states. The physical examination certificate is endorsed across the face as follows: "Susp F4 (seizures) per Marge 7-23-80"; presumably "Marge" is the duly appointed and qualified person to make the determination of competency. Insofar as procedural regularity is concerned, we shall apply the general rule of law that a prima facie presumption of the regularity of acts of public officials exists until the contrary appears. See Albert v. Lehigh Coal & Nav. Co., 431 Pa. 600, 246 A. 2d 840 (1968); Hughes v. Chaplin, 389 Pa. 93, 132 A. 2d 200 (1957); Topper Estate Tax Sale, 37 Somerset 293, 303 (1979); Com. v. Husick, 33 Somerset 60, 64 (1975); Turney Tax Sale, 30 Somerset 161 (1974); 14 P.L.E., Evidence §35; 31A C.J.S., Evidence §146. There is no contrary evidence in this case, and appellant has not challenged the adequacy of the Commonwealth's evidentiary record on procedural grounds.

The real issue here is the substantive one of whether or not appellant is incompetent to drive.

### INCOMPETENCY

The first problem on the merits is determining what condition of incompetency the Commonwealth is obligated to prove. The statutory definition of incompetency is contained in code section 1518(a) which provides as follows:

"(a) Definition of disorders and disabilities. —The Medical Advisory Board shall define disorders characterized by lapses of consciousness or

other mental or physical disabilities affecting the ability of a person to drive safely for the purpose of the reports required by this section."

This language creates two classes of conditions which produce incompetency: (1) "disorders characterized by lapses of consciousness," and (2) "other mental or physical disabilities affecting the ability of a person to drive safely." The regulations of the Department, 67 Pa. Code § 157.5(a)(1) through (9), define nine conditions which prohibit a person afflicted therewith from driving "if, in the opinion of the examining physician, the conditions are likely to interfere with the ability to control and safely operate a motor vehicle;" two of those subsections, (4) "Periodic loss of consciousness, attention or awareness from whatever cause" and (9) "Any other condition which . . . could interfere with the ability to control and safely operate a motor vehicle," are relevant here. But the official notice of recall, which is the equivalent of the Commonwealth's pleading in the case, selects subparagraph (4) only as the ground for recall in stating: "Physical examination reports submitted by the physician of your choice revealed a condition causing lapses of consciousness during the past two calender years which is not compatible with the safe operation of a motor vehicle." Strictly speaking, therefore, the Commonwealth's proofs must conform to its allegations by establishing such "lapses of consciousness" under section 157.5(a)(4), supra, not merely an unspecified "other condition" affecting safe driving under section 157.5(a)(9), supra.

Making the same comparison of the physician's report with standards, we cannot reach the same conclusion. The official medical report form in evidence (Physical Examination Certificate, Part II

Physician's Report Of Examination) dated February 4, 1980 deals with lapses of consciousness in Item 4 thereof which states (emphasized portions written in by physician): "Conditions causing repeated lapses of consciousness. E. G. Epilepsy narcolepsy, hysteria, etc. (may be considered if episode free for one year with or without medication) *last seizure* 3/11/79 . . . Yes ( ) No (x). If yes, specify: *on meds*."

Item 11 of the report is unanswered and reads as follows:

"11. List any other condition that would prevent control of a motor vehicle _____."

Item 12 is answered "no" and reads:

"12. Any recommendations/additional commente should accompany this certificate on physician letterhead enclosure. Yes ( ) No. (x)."

Item 13 is not answered yes or no, but the physician wrote the emphasized comment thereto, as follows:

"13. Written comments given to operator *Recommend not driving alone* Yes ( ) No ( )."

In our judgment, the report clearly negates any lapses of consciousness from appellant's condition; while the report may fairly be said to establish some other seizure "condition which, in the opinion of the examining licensed physician, could interefere with the ability to control and safely operate a motor vehicle," section 157.5(9), supra, the Commonwealth's evidence is insufficient to sustain its burden, assumed by the terms of the recall notice, of establishing appellant's lapses of consciousness. Our conclusions are fully consistent with the only witness testimony in the case given by appellant and her husband. But we do not dispose of the case on the basis of this discrepancy; we shall assume

that the recall may properly be sustained upon legally competent proof of "any other condition" falling within the terms of section 157.5(a)(9), supra.

We are thus confronted with the question whether the Commonwealth's certified record of departmental documents is alone legally competent proof of a medical disorder or condition of incompetency without producing the physician as witness. We think it is not.

Commonwealth counsel did not articulate his theory by which the documentary record alone is competent proof of the condition of incompetency, but it must necessarily be that such record carries with it an evidentiary presumption of the regularity and propriety of official conduct, as we previously accepted as sufficient to establish the Department's procedural regularity, of sufficient weight to sustain a finding of incompetency in this case. But we find several difficulties with that position here.

First, the presumption of the regularity of official conduct should not be permitted to override the important principle of law that medical records are not competent evidence of a physical or mental condition which requires expert diagnosis and opinion without calling the examining physician as a witness. See Com. v. Seville, 266 Pa. Superior Ct. 587, 591, 405 A. 2d 1262, 1264 (1979); see, also, Com. v. Garcia, 478 Pa. 406, 426, 387 A. 2d 46 (1978); Com. v. DiGiacomo, 463 Pa. 449, 455, 345 A. 2d 605 (1975); Com. v. McCloud, 457 Pa. 310, 322 A. 2d 653 (1974); Jones Appeal, 449 Pa. 543, 297 A. 2d 117 (1972); Freedman v. Mutual Life Ins. Co. of N.Y., 342 Pa. 404, 21 A. 2d 81 (1941); Paxos v. Jarka Corp., 314 Pa. 148, 171 Atl. 468 (1934); Pittsburgh National Bank v. Mutual Life Ins. Co. of N.Y., 273 Pa. Superior Ct. 592, 417 A. 2d 1206

(1980); Com. v. McNaughton, 252 Pa. Superior Ct. 302, 306, 381 A. 2d 929 (1977); Myers v. Genis, 235 Pa. Superior Ct. 531, 344 A. 2d 691 (1975); Com. v. Passarella, 7 Pa. Commonwealth Ct. 584, 300 A. 2d 844 (1973); Jenkins, Pennsylvania Trial Evidence § 8.6(a), (b) and (c); Binder, The Hearsay Handbook § § 8.2, 10(1) and 10(4); compare on related issues Cody v. S.K.F. Industries, Inc., 447 Pa. 558, 291 A. 2d 772 (1972); Com. v. Boring, 257 Pa. Superior Ct. 403, 390 A. 2d 1299 (1978); Com. v. Wilson, 245 Pa. Superior Ct. 415, 420, 369 A. 2d 471 (1976); Com. v. Campbell, 244 Pa. Superior Ct. 505, 509, 368 A. 2d 1299 (1976); Bodes v. Smith, 28 Somerset 41 (1972).[2] Dispensing with the physician's presence in such case gives the proponent of the medical record an unfair advantage over the opponent who is thereby deprived of the opportunity of cross-examination of the opinion giver. Although the testimony of appellant adequately establishes that the report was made by a competent physician, it challenges any conclusion of incompetency; in such case, the right of confrontation between witness and opponent is vital even in a civil case. In Wigmore, Evidence § 2534, it is stated that the presumption of official regularity is applied only on certain conditions, one being that "the matter . . .

2. On the effect of the physician's unavailability or lack of independent recollection, see Brown, Pennsylvania Evidence, Chapter VII, Part XIII E3, citing Lane v. Samuels, 350 Pa. 446, 39 A. 2d 626 (1944); Freedman v. Mutual Life Ins. Co. of N.Y., supra; Harkness v. Swissvale Borough, 238 Pa. 544, 86 Atl. 478 (1913).

In the instant case, there is no indication that the examining physician was unavailable for testimony; moreover, the Commonwealth could always have a current physical examination made of appellant by any available physician of its choice under section 157.5(b) previously referred to in the opinion.

involves a mere formality or detail of required procedure in the routine of a litigation or of a public officer's action." As stated by the Supreme Court in Paxos v. Jarka, supra, at 154:

"As any practical experience in trial work reveals, the testimony of a doctor as to the extent of injuries and their effects is primarily opinion evidence at best, and, where the person stating the opinion is present in court, is subjected to the severest of examinations to test its strength. The qualifications of the author can be looked into only in cross-examination. An opinion expressed in hospital records [were they to be admitted without the presence of the physician] is subject to no such searching inquiry as to accuracy, soundness, and veracity. Hence the danger in admitting them is very great. However admirable, whatever the character and reputation of the institution from which records come, to deny a defendant the opportunity to test the correctness of the diagnosis and ascertain the qualifications of the assertor, particularly where the records were not made by the physician in charge of the case, is to deny it a *substantial right*." (Emphasis supplied.)

Appellant is entitled to that "substantial right."[3] Without the opportunity to examine and cross-examine the physician, his medical report alone

3. In criminal cases, admissibility of a medical record containing diagnosis of a matter requiring expert opinion may also involve defendant's constitutional right of confrontation, whereas there is no such express right in civil cases; whether such right is violated in a criminal case depends upon the risk of prejudice from the evidence in issue in the particular case. See Com. v. McCloud, supra, 312. A comparable right of confrontation in civil cases might properly be regarded as existing as a matter of due process, depending upon the substantiality of the risk of prejudice from non-confrontation hearsay.

does not establish with sufficient reliability the essential fact that a seizure episode while driving, without advance warning, is a probability or at least a substantial risk, rather than a mere outside possibility. See Com. v. Conelly, 28 Somerset 128 (1971); Stahl License, 8 D. & C. 3d 483 (1978); Horner License, 2 D. & C. 3d 563 (1977); Streich License, 66 D. & C. 2d 518 (1973); Com. v. Foulkrod, 66 D. & C. 2d 679 (1973); compare Roberts License, 61 D. & C. 2d 707 (1972), on relevance of advance warning. Only a physician's testimony under direct and cross-examination can reliably present the full range of probabilities and risks. Reliability is the essential condition of admissibility of a business or official document. As to official records, Judicial Code, 42 Pa.C.S.A. §6104, provides:

"(a) General rule.—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

"(b) Existence of facts.—A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness."

The essential justification for admissibility of business records under the Uniform Business Records As Evidence Act, Judicial Code, 42 Pa.C.S.A. §6108, is also reliability: In Re Robinson 486 Pa.

604, 610, 406 A. 2d 1365 (1979); Augustine v. Turkeyfoot Valley Area School Dist. (No. 2), 9 D. & C. 3d 183, 189, 35 Somerset 76, 81 (1977).[4]

Second, even assuming applicability of the presumption of regularity of official actions and that reception of the certified record establishes a prima facie case of incompetency for the Commonwealth, the effect of that presumption vanished with the credible contrary testimony by appellant and her husband on the issue of her present competency in fact, leaving the court with only that uncontradicted testimony to consider. As a general rule, the presumption of regularity of official conduct is but a procedural expedient whose only effect is to shift to the opponent the burden of going forward with evidence to show the contrary; and when the contrary is sufficiently shown, the effect of the presumption disappears as a "bursting bubble." See Albert v. Lehigh, supra, 610, fn. 5; Irwin Boro. Annexation Case, 165 Pa. Superior Ct. 119, 67 A. 2d 757 (1949); Wheatcroft v. Schmid, 8 Pa. Commonwealth Ct. 1, 5, 301 A. 2d 377 (1973); Turney Tax Sale, supra. 164; McCormick, Evidence §345(A). In this case, appellant has produced sufficient contrary evidence nullifying any presumption in favor of the Commonwealth, shifting back to the Commonwealth the burden of going forward with rebut-

---

4. The Vehicle Code contemplates that in incompetency cases, a qualified physician will be called as witness; Code section 1519(b) authorizes use of medical reports in such proceedings but also provides that the examining physician "may be compelled to testify concerning observations and findings in such proceedings . . . as an expert witness" at the cost of the party calling him. Departmental regulation section 157.5(a) listing the physical and mental conditions which produce incompetency to drive, previously discussed in the opinion requires "the opinion of the examining physician."

ting evidence which the Commonwealth has failed to carry, and the Commonwealth therefore stands without any evidence of incompetency for us to consider and with its burden of proof uncarried. Compare Com. v. Byrd, 39 Somerset 213 (1977), affirmed, 41 Pa. Commonwealth Ct. 38, 399 A. 2d 425 (1979) (opinion by Craig, J.)[5]

Third, and finally, even if we were to give substantive evidentiary value to the presumption, as fact finder we find that evidentiary effect so weak and unpersuasive (particularly in light of the vagueness of the physician's report and appellant's testimony that the physician saw her only once briefly), and we find appellant's testimony negating her present incompetency fully credible, that we find her competent to drive.[6]

---

5. We do not think the effect of the presumption necessarily disappears in all cases in face of sufficient contrary evidence; if the evidence triggering the presumption has such independent probative value as naturally evidences the presumed fact, or if the presumption is supported by a strong public policy, the efficacy of the presumption survives the contrary evidence and may support a decision by the fact finder according to the presumed fact. See Com. v. Thompson, 27 Somerset 241, 258 (1971), affirmed, per curiam, 221 Pa. Superior Ct. 824, 292 A. 2d 425 (1972), commented on in Com. v. DiFrancesco, 458 Pa. 188, 193, fn.3, 329 A. 2d 204 (1974); Com. v. Husick, supra, 64; McCormick, supra, §345(A). In this case, the importance to appellant of the right of cross-examination of the physician and the strong policy of the law supporting it, mandates treatment of the presumption as a mere procedural expedient.

6. Although the diagnosis of a seizure condition is obviously a matter involving expert medical opinion, and departmental regulation section 157.5(a), supra, requires that the existence of a condition which interferes with the ability to control and safely operate a motor vehicle be supported by "the opinion of the examining physician," appellant and her husband were competent to testify to their observations of obvious physical and mental effects of the seizure. See 15 P.L.E., Evidence §356; 32 C.J.S., Evidence §546(23).

## ORDER

Now, November 17, 1980, the appeal from recall of appellant's operating privilege is sustained, the recall order of the Department of Transportation is reversed and the Secretary of Transportation is directed to restore appellant's driver's license. Costs on appellant.