## In Re: Appeal of Charles R. Wiseman From Suspension of Operator's License

*Marilyn K. Josephs,* for the Commonwealth of Pennsylvania.
*Thomas O. Vreeland,* for appellant.

RODGERS, *J.,* August 1, 1983—The Commonwealth having appealed this court's order of June 29, 1983, sustaining the appeal of defendant, Charles R. Wiseman, and ordering the reinstatement of his operator's license on the condition that he continues to report to his medical doctor monthly for one year for continued treatment of an epileptic condition, and that the report of that examination be sent to the Bureau of Traffic Operations; that at such time, as his doctor indicates, appellant cannot operate a motor vehicle safely, then his license is to be recalled, this opinion is written in support of the court's order.

The only evidence submitted by the Commonwealth were five documents certified by the Director of the Bureau of Traffic Safety Operations which showed the following:

On March 10, 1983, the Pennsylvania Bureau of Traffic Safety Operations received a letter from H. J. Silvis, M.D. that appellant, Mr. Wiseman, apparent-

ly had a grand mal seizure on March 5, 1983, presently controlled on Dilantin; that he should be able to resume his normal activities within three to four weeks time. Dr. Silvis' report was required by Section 1518 (b) of the Pennsylvania Motor Vehicle Code, 75 Pa. C.S. §1518 (b).

By letter of March 23, 1983, the Commonwealth directed Mr. Wiseman to undergo an examination by his physician, the results of the examination to be submitted on the enclosed convulsive disorder form within 30 days.

On April 7, 1983, Dr. Silvis completed and mailed the convulsive disorder form stating that he had been treating Mr. Wiseman for seizures (grand mal) first seen on March 5, 1983; that he was coming to his office monthly; that he had had an episode of unconsciousness and/or convulsion on March 5, 1983, while asleep; that he had had an EEG which was abnormal due to generalized spike and spike wave discharge; that he is being treated with Dilantin; that the medication made him an unsafe driver; but from a medical standpoint only he considered Mr. Wiseman physically and mentally competent to operate a motor vehicle.

On April 21, 1983, the Commonwealth notified Mr. Wiseman that his operating privileges were recalled until satisfactory evidence was presented as to proof of competency as authorized by Section 1519 C of the Vehicle Code; the physical examination report submitted by the physician of his choice revealed that he had an epileptic condition which was not compatible with the safe operation of a motor vehicle; that this decision had been made by comparing his physician's report with the standards recommended by the Department's Medical Advisory Board, and adopted by the department; that if his condition improved, his doctor should submit a new

physical examination report for reevaluation; that the effective date of the recall was May 6, 1983. Also, attached by the Commonwealth, was Mr. Wiseman's driving record, which showed no violations, and that the notice of recall was effective May 26, 1983, until proof of competency was established.

Mr. Wiseman, by his counsel, informed the court that at the time of his seizure he was employed as a delivery truck driver; that his employer had received notice of the recall of the driving privileges; and that as a result he had lost his job and was unemployed.

Over objection of the Commonwealth, the court also admitted a letter dated June 15, 1983, addressed to appellant's counsel which stated that Mr. Wiseman had been seen in the hospital on March 5, 1983, because of the sudden onset of a seizure that had awakened his wife. At that time, examination revealed an abnormal EEG with the presence of generalized spiking wave discharges; that he was subsequently placed on Dilantin, 300 mg at bedtime with no further recurrence; that it was the doctor's belief and opinion that the patient was stabilized from his grand mal seizure that he had had in March; that he should be a safe and reasonable driver to resume his normal activities without any further restrictions other than the fact that he should avoid alcohol consumption.

Section 1517 of the Vehicle Code, 75 Pa. C.S. §1517, creates a Medical Advisory Board of 13 members appointed by the Secretary of Transportation, consisting of eight doctors and five officials of the Commonwealth, directed to formulate rules and regulations for adoption by the department of physical and mental criteria for the licensing of drivers.

Section 1519 (a) of the Vehicle Code authorizes the department to have examination made by a phy-

sician of any applicant who may not be physically or mentally qualified to be licensed; authorizes the driver to cause a written report to be forwarded to the department by a physician of his choice; requires the department to appoint one or more qualified persons who shall consider all medical reports and testimony in determining the competency of the driver to drive.

Section 1519 (c) of the Vehicle Code requires the department to recall the operating privilege of any person whose incompetency had been established under the provisions of Chapter Fifteen of the Vehicle Code; the recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle, and authorizes any person aggrieved by recall to appeal to the Court of Common Pleas, as provided in Section 1550 of the Vehicle Code. Section 1550 (b), provides that the filing of the appeal shall operate as a supersedeas and no recall shall be imposed against such person until final determination of the matter.

The Department of Transportation has adopted the following physical and medical standards as recommended by the Medical Advisory Board, 67 Pa. Code § 83.4 and § 83.5.

"§ 83.4. Epilepsy.

(a) General. A person suffering from epilepsy shall not drive unless their personal licensed physician shall report that the person has been free from seizure for a period of at least one year immediately preceding, with or without medication.

(b) Applicants between the ages of 16 and 18 years. Applicants between the ages of 16 and 18 years applying for their first license shall have been free from seizure for a period of at least two years immediately preceding, with or without medication.

(c)   Waiver. Waiver of the freedom from seizure requirements may be made upon speciific recommendation by a licensed physician who specializes in neurology or neurosurgery, if:

(1) a strictly nocturnal pattern of the condition has been established over a period of at least three years immediately preceding, with or without medication; or

(2) a specific prolonged aura accompanied by sufficient warning has been established over a period of at least five years immediately preceding, with or without medication.

§ 83.5. Other physical and medical standards.

(a) General. A person afflicted by any of the following conditions shall not drive if, in the opinion of the examining physician, the conditions are likely to interfere with the ability to control and safely operate a motor vehicle:

(1) Loss or impairment of the use of a foot, leg, finger, thumb, hand, or arm, as a functional defect or limitation.

(2) Unstable or brittle diabetes or hypoglycemia, unless there has been a continuous period of at least six months freedom from any related syncopal attack.

(3) Cerebral vascular insufficiency or cardivascular disease, including hypertension, with accompanying signs and symptoms.

(4) Periodic loss of consciousness, attention or awareness from whatever cause.

(5) Rheumatic, arthritic, orthopedic, muscular or neuromuscular disease.

(6) Mental deficiency or marked mental retardation in accordance with the International Classification of Diseases. For diagnostic categories, terminology and concepts to be used in classification,

the physician should refer to the Diagnostic and Statistical Manual of the American Psychiatric Association and the Manual on Terminology and Classification in Mental Retardation of the American Association on Mental Deficiency.

(7) Mental or emotional disorder, whether organic or functional.

(8) Use of any drug or substance, including alcohol, known to impair skill or functions, regardless whether the drug or substance is medically prescribed.

(9) Any other condition which, in the opinion of the examining licensed physician, could interfere with the ability to control and safely operate a motor vehicle."

The issue before the court is, can the holder of a motor vehicle operator's license, who had previously suffered a single epileptic seizure, but who has now been found to be, by his physician, physically and mentally competent to operate a motor vehicle safely, because his condition is controlled and stabilized by medication, nevertheless, have his motor vehicle license suspended or recalled by the Bureau of Traffic Safety for a minimum period of at least one year solely on the basis of a departmental regulation declaring that a history of epileptic seizure alone, absolutely disqualifies any person from legally operating a motor vehicle for a period of at least one year?

Mr. Wiseman contends the regulation is substantively unreasonable and procedurally offensive to due process.

Since the regulation, which mandates a seizure free period of at least one year before a person suffering from epilepsy may legally drive, was adopted pursuant to a rule making power granted by statute, it is to be judged valid by this court, if the rule is within the granted power, issued pursuant to proper

procedure and is reasonable. Girard School District v. Pittenger, 481 Pa. 91, 392 A.2d 261 (1978), at 262.

Sections 1517, 1518 and 1519 of the Vehicle Code empower the department to recall the operating privilege of any person whose incompetency has been established on the basis of rules and regulations recommended by the Medical Advisory Board, and adopted by the department, formulating physical and mental criteria and defining disorders characterized by lapses of consciousness or other mental or physical disabilities affecting the ability of a person to drive safely.

The court, therefore, concludes that the regulation, 67 Pa. Code § 83.4 is within the granted power. Since there has been no challenge to the procedure involved in issuance of the regulation, there remains only the question of its reasonableness.

Mr. Wiseman is a 26 year old man, previously employed as a truck driver, with an unblemished driving record, who has suffered one grand mal seizure in his life, and whose doctor has expressed the opinion that his condition is stabilized, and controlled with the use of medication, and that he is able to function as a safe and reasonable driver.

The Commonwealth, however, takes the position that in the case of an epileptic seizure, the opinion of the examining physician that the condition is not likely to interfere with the ability to control and safely operate a motor vehicle is irrelevant and immaterial. Once a diagnosis of epilepsy is made, 67 Pa. Code §83.4 (a) creates a conclusive and irrebuttable presumption of incompetency to drive until the operator has been seizure free for a period of at least one year.

Epilepsy is thus singled out. In the case of other conditions, 67 Pa. Code §83.5, periodic loss of con-

sciousness, attention or awareness from whatever cause, such as unstable or brittle diabetes, or hypoglycemia is not grounds for recall, unless in the opinion of the examining physician the condition is likely to interfere with the ability to control and safely operate a motor vehicle. Indeed, under the provisions of the Code, 75 Pa. C.S. § 1518 (a) (b), a physician is not even required to report conditions other than epilepsy, unless in the opinion of the physician it is a disability affecting the ability of the person to drive safely.

In the case of the Commonwealth of Pennsylvania, Department of Transportation v. Byrd, 41 Pa. Commw. 38, 399 A.2d 425 (1979), the Commonwealth Court held that the departmental regulation that a history of myocardial infarction alone, absolutely and without exception, disqualified a person from legally driving a school bus, did not conform to the express legislative intent of the statute providing for suspension for physical disability, since the regulation disqualified without evidence of current disability. The court said, 399 A.2d at 429:

"Of central significance is the fact that the Department offered no offsetting evidence whatsoever in support of the reasonableness or medical soundness of the regulation — no basis for the view that one infarction forever after renders a person unsafe as a school bus driver. The Commonwealth's case rested solely on documentary evidence that the infarction had been suffered by Byrd."

In the instant case, to be sure, we apparently have a recommendation by a medical advisory board, which included some doctors, that a single epileptic seizure renders all persons incompetent to drive for a period of at least one year.

A pamphlet distributed by the United States Department of Health and Human Services entitled

"Epilepsy" prepared by the Office of Scientific and Health Reports, the National Institute of Neurological and Communicative Disorders and Strokes, NIH Publication No. 81-156, July 1981, says this:

"The strange symptoms and sometimes bizarre behavior of patients with epilepsy have contributed to age-old superstitions and prejudice. As long ago as 400 B.C. Hippocrates repeated the popular folklore that epilepsy was a visitation of the gods — a 'sacred disease.' He had the wisdom to question folklore, however. Hippocrates suspected that epilepsy was a disorder of the brain. And he was right. . . . .

Supercharged cells

Nowadays, scientists know that epilepsy is not a disease with a single cause. Rather, it is a set of symptoms associated with abnormal nerve cell activity in the brain. . . . The good news is that seizures can be successfully controlled in over half the patients with epilepsy through daily medication with antiepileptic drugs."

In the case of Geen v. Foschio, 94 F.R.D. 177 (1982), the New York State Department of Motor Vehicles suspended the driver's license of Glen Neville until he had gone without an epileptic episode for one year.

Mr. Neville's physician submitted a letter to the court stating that in his professional opinion "the chances of his [patient] having a seizure during the daytime or while driving at any time are exceedingly remote". In granting Mr. Neville's motion for preliminary injunctive relief, the court found that the loss of his job was tantamount to irreparable harm, and that he had demonstrated a likelihood of success on the merits.

The department was ordered to return Mr. Neville's driver's license, restricted to daytime driv-

ing until the case was finally resolved, and, also, on the condition that Mr. Neville notify the department, immediately, if he suffered another seizure. The court also certified a statewide class of plaintiffs who as a result of suffering from epilepsy would be subject to the department's policy of automatically withholding driving privileges.

As a result of the class action suit, the one year seizure free driver licensing rule has now been changed to allow exceptions for people whose physicians certify that they are capable of driving safely. National Spokesman, Epilepsy Foundation of America, June 1983, p.1. Cf. Costner v. United States, 55 F. Supp. 146 (1982).

"Every epileptic patient is unique in the symptoms, frequency, duration, and type (or types) of seizure he or she experiences." U.S. Department of Health and Human Services, Epilepsy at page 7.

An earlier publication, Wechsler, A Textbook of Clinical Neurology, Seventh Edition (1952), p. 612, says this:

"The course of epilepsy varies in different individuals. Some have only occasional convulsions, at the rate of one or two a year or one in several years; other may have them as often as once a day and occasionally several in one day."

Medications for Epilepsy, Epilepsy Foundation of America (1979) says this:

"The standard modern treatment for most types of epileptic seizures is regular use of one or more chemical substances called anticonvulsant or antiepileptic drugs.

Treatment with anticonvulsants has dramatically changed the kind of life that people with epilepsy can expect to live. For hundreds of thousands of people these drugs have meant the difference between a fearful, isolated existence and a confident

life based on the knowledge that the chances of having a seizure are small.

At present sixteen anticonvulsants have been approved by the Food and Drug Administration for use in the treatment of epilepsy in the United States. None of the existing drugs can cure epilepsy, but they have become increasingly successful in preventing seizures so long as they are taken regularly."

To paraphrase Judge Craig's opinion in the case of Commonwealth v. Byrd, supra, of central significance is the fact the department offered no offsetting evidence whatsoever in support of the reasonableness or medical soundness of the regulation — no basis for the view that one epileptic seizure renders every person unsafe as a motor vehicle driver for a period of at least one year.

This court, therefore, holds that the regulation, 67 Pa. Code §83.4 automatically suspending the licenses of any driver who has suffered an epileptic seizure for a period of at least one year is unreasonable.

Even if the regulation were reasonable, it offends due process.

In the case of every condition, but epilepsy, 67 Pa. Code §83.5, requires the opinion of the examining physician that the conditions are likely to interfere with the ability to control and safely operate a motor vehicle, and permits the operator to offer medical testimony to rebut any presumption arising from the report of the examining physician. Thus, in the case of Commonwealth v. Kipp, 18 D.&C.3d, 592 (1980), the treating physician chose to report appellant's seizure as a periodic loss of consciousness, rather than an epileptic seizure; the court found that appellant had overcome any presumption by the testimony of herself and her husband.

75 Pa. Code §83.4 sets forth a conclusive and irrebuttable presumption that a person suffering from epilepsy is incompetent to drive for a period of at least one year. In a license suspension case, procedural due process requires a meaningful hearing. Commonwealth v. Quinlan, 47 Pa. Commw. 214, 408 A.2d 173 at 175 (1979).

Mr. Wiseman's license was suspended because, "you have an epileptic condition which is not compatible with the safe operation of a motor vehicle". Actually, his license has been suspended because he has an epileptic condition, and if the department's regulation is valid, whether such condition is compatible or not compatible with the safe operation of his motor vehicle, is immaterial.

This court finds such procedure offends procedural due process.

This court, therefore, holds that the regulation singling out the epileptic condition for discriminatory treatment is substantively unreasonable and procedurally offensive to due process.

### ORDER

And now, this June 29, 1983, the court sustains the appeal of defendant, Charles R. Wiseman, and orders reinstatement of his license on condition that defendant continue to report to Dr. Silvis or whoever the medical doctor may be at least monthly for the balance of the year of suspension, and that a report of that examination be sent to the Bureau of Traffic Safety Operations. And of course, at such time as the doctor indicates that he cannot continue with normal activities, particularly operating a motor vehicle, then his license will be suspended.