Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Arthur Johnson, Appellee.

Submitted on briefs June 6, 1984, to Judges ROGERS, CRAIG and BARBIERI, sitting as a panel of three.

*Robert C. Bell,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*Daniel J. McAleer,* with him, *Paul V. Tatlow, Thomas F. McDevitt, P.C.,* for appellee.

OPINION BY JUDGE CRAIG, July 17, 1984:

The Pennsylvania Department of Transportation appeals an order by Judge WHITE of the Court of Common Pleas of Philadelphia County, which reversed the department's decision recalling the school bus operating privileges of Arthur Johnson.

The Vehicle Code requires that school bus drivers be physically qualified. Section 1504(c), 75 Pa. C. S. §1504(c), authorizes and requires the department to "establish by regulation the qualifications necessary for the safe operation of the various types . . . of vehicles and the manner of examining applicants to determine their qualifications. . . ." Section 1509(a)(2), 75 Pa. C. S. §1509(a)(2), as to a school bus driver license, Class 4, requires "an annual physical examination to be given by the physician for the school district. . . ." Section 1517(b), 75 Pa. C. S. §1517(b), establishes a medical board and requires that board to "formulate rules and regulations for adoption by the department on physical and mental criteria . . . relating to the licensing of drivers."

The current regulation, at 67 Pa. Code §71.3(b), reiterates the annual physical examination requirement for school bus drivers and states "the minimum requirements for passing a physical examination" as including, not only compliance with specified vision standards and the absence of anatomical impairment but also:

(3) No established medical history or clinical diagnosis of:

(i) diabetes mellitus requiring use of insulin or any other hypoglycemic medication.

(ii) myocardial infarction, angina pectoris, coronary insufficiency.

(iii) any other form of cardiovascular disease, including hypertension with syncope, dyspnoea, loss of consciousness, collapse or congestive failure.

The subsection proceeds to enumerate, in addition, respiratory, rheumatic, arthritic, orthopedic or other disfunction "likely to interfere with the ability to drive a school bus with safety," as well as epilepsy or other condition "which may cause momentary lapses in consciousness," and finally "any other condition which in the opinion of the examining physician could interefere with the ability to drive a school bus with safety." 67 Pa. Code §71.3(b)(vii).

As found by the trial judge, on the basis of medical reports submitted of record to him, Mr. Johnson's physician reported that he had a history of a mild acute myocardial infarction in September, 1982 but was qualified to drive a school bus. A medical report dated February 16, 1983 showed him to be in good physical condition, and there was also a negative treadmill exercise report.

Solely on the basis of the "established medical history" of myocardial infarction in the School Bus Driver's Physical Examination Report and a Cardiovascular Form Report, the department's consulting physician determined that Johnson was physically unqualified, without examining him. The department's recall notice simply stated to Johnson that his operating privileges were being recalled because "you have a cardiovascular condition which is not compatible with the safe operation of a school bus."

Thus, in this case, the precise issue is remarkably similar to the issue with which we prefaced our deci-

sion in *Department of Transportation, Bureau of Traffic Safety v. Byrd,* 41 Pa. Commonwealth Ct. 38, 399 A.2d 425 (1979) *(Byrd).* Restated with immaterial modification, to conform precisely to the present record, the issue is:

Can the holder of a school bus driver's license, who has had a history of a myocardial infarction, but who now has been found upon medical examination to be in good physical condition, capable of operating a school bus safely, with a negative treadmill exercise report, nevertheless have his school bus operator's privileges suspended by the department solely upon the basis of departmental regulation declaring that a history of myocardial infarction alone will disqualify a school bus operator?

*Byrd,* in which we affirmed the trial court decision which restored the operating privileges on the basis of the invalidity of the regulation which automatically disqualified by reason of medical history alone, is not necessarily controlling because there have been statutory changes in the meantime.

In *Department of Transportation, Bureau of Traffic Safety v. Slater,* 75 Pa. Commonwealth Ct. 310, 314-15, 462 A.2d 870, 873 (1983), we summarized the interrelationship of the *Byrd* decision and the statutory changes in terms applicable here. Referring to the earlier status of the regulation, under *Byrd,* we said in *Slater:*

The department had promulgated that regulation under section 609 of the former Vehicle Code which, like present section 1509, generally provided that no person could legally operate a school bus unless he "has satisfactorily passed a physical examination. . . ."

Our holding in Byrd, that a department regulation which declared that a history of myo-

cardial infarction alone, absolutely and without exception, disqualified any person from legally driving a school bus, exceeded the department's legislative authority to require that school bus drivers pass annual physical exams, rested on our crucial determination that:

"No express authorization exists under the 1959 Vehicle Code for the Department to promulgate regulations implementing Section 609 above.
Id. at 41, 399 A.2d at 426."

However, as we noted in Byrd, the legislature repealed the 1959 Vehicle Code and re-enacted the current Vehicle Code, which became effective on July 1, 1977. Thus, we decided Byrd under the 1959 Code; here, however, we must consider the validity of section 71.3 under the current Code.

As noted above, the current Code presently grants express authority to promulgate regulations on licensing qualifications and also has newly established the Medical Advisory Board as a formal body to provide an expert source for those departmental regulations.

Here, as in *Byrd* and *Slater,* we recognize the difference between a regulation promulgated under an agency's interpretive rule-making powers (the *Byrd* situation) and one promulgated under an express grant of legislative power (*Slater* and the present case). *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973). Accordingly, in *Slater* we treated 67 Pa. Code §71.3 as having an effect like that of a statute, and we declined to accept a contention that 67 Pa. Code §71.3 was invalid in that it irrationally created an irrebuttable presumption.

However, the facts in *Slater* did not rest upon a mere report of a history of diabetes mellitus. The *Slater* record indicated that 500 milligrams of a hypoglycemic drug was administered daily to the driver in question, that he did not adhere to his diet, and that his blood sugar was not within normal range, together with a finding of the common pleas court, that the diabetes was well controlled nevertheless.

Weighing these difficult considerations with recognition of the stronger statutory basis for the present regulations, we nevertheless perceive a real distinction between the revocation of Mr. Slater's school bus driver's license on the basis of a current and continuing condition of diabetes, in contrast to the present license recall, based solely upon a history of myocardial infarction as to which the record presents no evidence to support the department's declaration of any *existing* "cardiovascular condition."

Although the regulation at 67 Pa. Code §71.3(b)(3) disqualifies on the basis of medical history *or* clinical diagnosis, stated disjunctively, careful reading shows that all of the described physical conditions refer to diseases, conditions or disabilities in existence, likely to interfere with safe school bus driving, with the exception of the references to diabetes mellitus and the various types of cardiovascular disease. With respect to those two categories alone, the regulation appears to disqualify upon the basis of past history, as well as current impairment.

Accordingly, we must conclude that this case falls much closer to the facts and analysis in *Byrd,* rather than to the facts and analysis in *Slater.*

As in *Byrd,* we must conclude that the regulation, as applied by the Commonwealth to disqualify on the basis of a past history of myocardial infarction, does not conform to the express legislative authorization of

75 Pa. C. S. §1517(b) or of 75 Pa. C. S. §1518(a), authorizing the Medical Advisory Board to "define disorders characterized by lapses of consciousness or other mental or physical disabilities affecting the ability of a person to drive safely. . . ." Because the *history* of a disorder is not synonymous with the current *existence* of a disorder, we find the department's application of the regulation to the facts of this case to be unlawful, and accordingly will affirm the decision of the trial court.

ORDER

Now, July 17, 1984, the order of the Court of Common Pleas of Philadelphia County, dated February 17, 1983, is affirmed.