Commonwealth of Pennsylvania, Department of Transportation, Bureau of Traffic Safety, Appellant *v.* Arthur Johnson, Appellee.

Submitted on briefs June 6, 1984, to Judges ROGERS and CRAIG and Senior Judge BARBIERI, sitting as a panel of three. Reargued January 30, 1985, before President Judge CRUMLISH, JR. and Judges ROGERS, CRAIG, MACPHAIL, DOYLE, COLINS and PALLADINO.

*Robert C. Bell,* Assistant Counsel, with him, *Howard H. Cramer,* Assistant Counsel, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellant.

*Paul V. Tatlow,* with him, *Daniel J. McAleer, Thomas F. McDevitt, P.C.,* for appellee.

OPINION BY JUDGE CRAIG, March 19, 1985:

The Pennsylvania Department of Transportation appealed an order by Judge WHITE of the Court of Common Pleas of Philadelphia County, which had reversed the department's decision recalling the school

bus operating privileges of Arthur Johnson because he had a history of a myocardial infarction. Pursuant to an earlier argument of the appeal, a panel of this court, under date of July 17, 1984, affirmed the trial court's order.

After careful consideration, this court granted re-argument of the case before the court en banc. We now vacate the panel opinion and order of July 17, 1984, and file this opinion of the court en banc, with an order reversing the decision appealed.

The Vehicle Code requires that school bus drivers be physically qualified. At 75 Pa. C. S. §1504(c), the Code authorizes and requires the department to "establish by regulation the qualifications necessary for the safe operation of the various types . . . of vehicles and the manner of examining applicants to determine their qualifications. . . ." At 75 Pa. C. S. §1509(a)(2), relating to school bus driver licenses, the Code requires "an annual physical examination to be given by the physician for the school district. . . ." Finally, at 75 Pa. C. S. §1517(b), the Code establishes a medical board and requires that board to "formulate rules and regulations for adoption by the department on physical and mental criteria . . . relating to the licensing of drivers."

The current regulation, at 67 Pa. Code §71.3(b), reiterates the annual physical examination requirement for school bus drivers and states "the minimum requirements for passing a physical examination" as including, not only compliance with specified vision standards and the absence of anatomical impairment, but also:

(3) No established medical history or clinical diagnosis of:

(i) diabetes mellitus requiring use of insulin or any other hypoglycemic medication.

    (ii)   myocardial infarction, angina pectoris, coronary insufficiency.

    (iii)   any other form of cardiovascular disease, including hypertension with syncope, dyspnea, loss of consciousness, collapse or congestive failure.

The subsection proceeds to enumerate, in addition, respiratory, rheumatic, arthritic, orthopedic or other disfunction "likely to interfere with the ability to drive a school bus with safety," as well as epilepsy or other condition "which may cause momentary lapses in consciousness," and finally "any other condition which in the opinion of the examining physician could interfere with the ability to drive a school bus with safety." 67 Pa. Code §71.3(b)(vii).

As found by the trial judge, on the basis of medical reports in the record, Mr. Johnson's physician reported that he had a history of a mild acute myocardial infarction in September, 1982 but was qualified to drive a school bus. A medical report dated February 16, 1983 showed him to be in good physical condition, and there was also a treadmill exercise report negative as to disfunction.

Solely on the basis of the "established medical history" of myocardial infarction in the School Bus Driver's Physical Examination Report and a Cardiovascular Form Report, the department's consulting physician determined that Johnson was physically unqualified, without examining him. The department's recall notice simply stated to Johnson that his operating privileges were being recalled because "you have a cardiovascular condition which is not compatible with the safe operation of a school bus."

Thus, the issue is similar to that with which we prefaced our decision in *Department of Transportation, Bureau of Traffic Safety v. Byrd,* 41 Pa. Com-

monwealth Ct. 38, 399 A.2d 425 (1979) *(Byrd)*. Restated with immaterial modification, to conform precisely to the present record, the issue is:

>·Can the holder of a school bus driver's license, who has had a history of a myocardial infarction, but who now has been found upon medical examination to be in good physical condition, nevertheless have his school bus operator's privileges suspended by the department solely upon the basis of departmental regulation declaring that a history of myocardial infarction alone will disqualify a school bus operator?

However, *Byrd,* in which we affirmed the trial court decision which restored the operating privileges on the basis of the invalidity of the regulation which automatically disqualified by reason of medical history alone, is not controlling because there have been statutory changes in the meantime.

In *Department of Transportation, Bureau of Traffic Safety v. Slater,* 75 Pa. Commonwealth Ct. 310, 314-15, 462 A.2d 870, 873 (1983), we summarized the interrelationship of the *Byrd* decision and the statutory changes in terms applicable here. Referring to the earlier status of the regulation, under *Byrd,* we said in *Slater:*

>The department had promulgated that regulation under section 609 of the former Vehicle Code which, like present section 1509, generally provided that no person could legally operate a school bus unless he "has satisfactorily passed a physical examination. . . ."

>Our holding in Byrd, that a department regulation which declared that a history of myocardial infarction alone, absolutely and without exception, disqualified any person from legally driving a school bus, exceeded the department's

legislative authority to require that school bus drivers pass annual physical exams, rested on our crucial determination that:

No express authorization exists under the 1959 Vehicle Code for the Department to promulgate regulations implementing Section 609 above.

*Id.* at 41, 399 A.2d at 426.

However, as we noted in Byrd, the legislature repealed the 1959 Vehicle Code and reenacted the current Vehicle Code, which became effective on July 1, 1977. Thus, we decided Byrd under the 1959 Code; here, however, we must consider the validity of section 71.3 under the current Code.

As noted above, the current Code presently grants express authority to promulgate regulations on licensing qualifications and also has newly established the Medical Advisory Board as a formal body to provide an expert source for those departmental regulations.

Here, as in *Byrd* and *Slater,* we recognize the difference between a regulation promulgated under an agency's interpretive rule-making powers (the *Byrd* situation) and one promulgated under an express grant of legislative power (*Slater* and the present case). *Uniontown Area School District v. Pennsylvania Human Relations Commission,* 455 Pa. 52, 313 A.2d 156 (1973). Accordingly, in *Slater* we treated 67 Pa. Code §71.3 as having an effect like that of a statute, and we declined to accept a contention that 67 Pa. Code §71.3 was invalid in that it irrationally created an irrebuttable presumption.

However, the facts in *Slater* did not rest upon a mere report of a history of diabetes mellitus. The

*Slater* record indicated that 500 milligrams of a hypoglycemic drug were administered daily to the driver in question, that he did not adhere to his diet, and that his blood sugar was not within normal range, together with a finding of the common pleas court that the diabetes was well controlled nevertheless.

Thus, there is a possible distinction between the revocation of Mr. Slater's school bus driver's license on the basis of a current and continuing condition of diabetes, in contrast to the present license recall, based solely upon a history of myocardial infarction.

Hence, because the present regulation, at 67 Pa. Code §71.3(b)(3), disqualifies solely on the basis of such a medical history, without proof of any current impairment, this case squarely requires this court to decide the validity of the regulation in the present context.

After weighing all the factors and considering this court's line of decisions on the subject, our conclusion is that the regulation, thus read and applied, is reasonable and hence valid under substantive due process tests. In *Huntsberger v. Commonwealth of Pennsylvania*, 76 Pa. Commonwealth Ct. 456, 463 A.2d 1288 (1983), not long after *Slater*, a panel decision by this court upheld the validity of the regulation in a case on all fours with the present case, in that it involved the recall of the driver's license of a school bus driver who had a history of a myocardial infarction but was currently asymptomatic. (*Huntsberger* was not available to the trial judge in this case because its filing date was later than the date of his decision.) Hence, our earlier panel decision in this case conflicted with *Huntsberger*. We here resolve that conflict by settling upon the *Huntsberger* result.

In *Huntsberger*, this court adopted the rationale from the opinion of Judge ESHELMAN, of the Court of

Common Pleas of Bucks County in that case, published in full in *Commonwealth of Pennsylvania v. Huntsberger*, 26 Pa. D. & C. 3d 563 (1981).

In that able opinion, Judge ESHELMAN also noted that the questioned regulation is a legislative regulation rather than an interpretive one. He stated:

Further, the regulation is reasonable. In determining the qualifications of drivers for a Class 4 license, special consideration must be given to the fact that Class 4 licensed operators are entrusted with the responsibility of transporting school children to and from their schools safely. The Department does not contend that appellant is incompetent to operate a motor vehicle for his own personal use or otherwise, but the Department by its rules and regulations formulated by the Medical Advisory Board, requires special physical qualifications for school bus drivers. The advisability of granting what type of driving privileges to a person who has suffered a myocardial infarction is a determination best left to those with medical expertise. Lacking such expertise, we are unable to make a valid judgment regarding the likelihood and severity of another heart attack or other medical difficulties of a person who has suffered a myocardial infarction, and we defer to the regulation established by the Medical Advisory Board, particularly when concerned with the additional safety precautions required when the transportation of school children is involved. Thus, although appellant's physician is of the opinion that appellant is competent to drive a school bus, we cannot conclude that the precautionary position taken by the Medical Advisory Board as expressed in the regulation, is unrea-

sonable. Therefore, we conclude that the regulation is not arbitrary or capricious.

*Huntsberger,* 26 D. & C. 3d at 568.

Therefore, because we sustain the validity of the regulatory basis for recall of a school bus driver's license solely upon the basis of a medical history of heart attack, the consequence is to uphold the action of the department and reverse the order of the trial court.

## ORDER

Now, March 19, 1985, the opinion and order of this court dated July 17, 1984 are vacated, and the order of the Court of Common Pleas of Philadelphia County, dated February 17, 1983, is reversed.

Judge COLINS dissents.

Judge WILLIAMS, JR., did not participate in the decision in this case.