565 A.2d 1252

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant,

v.

Alfred Ronald CHALFANT, Appellee.

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1989.

Decided Nov. 13, 1989.

Harold H. Cramer, Asst. Chief Counsel, with him, David R. White, Asst. Counsel, and John L. Heaton, Chief Counsel, Harrisburg, for appellant.

Maria Spina Altobelli, Davis and Davis, Uniontown, for appellee.

Before CRAIG and DOYLE, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Department of Transportation, Bureau of Driver Licensing (Department) has appealed from an order of the Court of Common Pleas of Fayette County which sustained the appeal of Alfred Ronald Chalfant (Chalfant), reinstating his school bus driver's license.

Pursuant to Section 1509 of the Vehicle Code (Code), 75 Pa.C.S. § 1509, school bus drivers are required to pass an annual physical examination in order to maintain their qualification for a Class 4 license. On July 28, 1988, Chalfant was examined by Dr. James A. Solan for this purpose and the results were reported to the Department. Although Dr. Solan indicated that he considered Chalfant physically qualified to operate a school bus, he noted that Chalfant had a prior history of seizures as a child, had been off all prescription medication for three years and had not had a seizure in over twenty years.

Upon receiving the completed form from Dr. Solan, the Department mailed a "Convulsive Disorder Form" to Chal-

fant and requested that he have his physician complete it. This form was completed by Dr. Richard A. Kasdan, who noted, *inter alia:* that Chalfant had been under his medical care since April of 1985, during which time he was not on seizure medication; that his diagnosis was that Chalfant suffered from a seizure disorder producing grand mal seizures that apparently only occur in stressful times, the last such seizure being approximately in 1966; that Chalfant had had an EEG done in April 1985, with normal results; and that he considered Chalfant to be physically and/or mentally competent to operate a motor vehicle.

Following receipt of this form, the Department recalled Chalfant's school bus driver's license. On Chalfant's appeal to common pleas court, the Department introduced copies of the forms completed by Drs. Solan and Kasdan, and they were admitted into evidence without objection. Chalfant offered no evidence. The trial court determined that the Department was required to prove that it was likely that Chalfant's disorder would cause loss or impairment of consciousness or loss of ability to drive a school bus safely and that the Department had failed to meet that burden.[1]

On appeal, the Department argues that it is not required to prove that Chalfant's condition affects his safe operation of a school bus. Rather, it contends that proof of the seizure disorder itself is sufficient under its regulations to justify recall of Chalfant's Class 4 operating privilege.

Section 1519(c) of the Code, 75 Pa.C.S. § 1519(c), authorizes the Department to "recall the operating privilege of any person whose incompetency has been established ...." The regulations governing the physical requirements for school bus drivers are contained in 67 Pa.Code § 71.3.[2] As pertinent to this appeal, those regulations provide that a

1. The trial court also found that Chalfant did not establish a *prima facie* case under Section 504 of the Federal Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794. In that Chalfant's counsel stated at oral argument that she was not seeking review of that aspect of the trial court's decision, we need not address that issue.

2. Pursuant to Section 1517 of the Code, 75 Pa.C.S. § 1517, these regulations were formulated by a Medical Advisory Board.

person is physically qualified to drive a school bus if that person "[h]as no established medical history or clinical diagnosis of seizure disorders or another condition likely to cause loss or impairment of consciousness or loss of ability to drive a school bus safely." 67 Pa.Code § 71.3(b)(10) (condition (b)(10)).

The Department contends that the regulations should be read to disqualify a person as a school bus driver if he has either (1) a seizure disorder, or (2) any other condition likely to affect his ability to drive safely. Chalfant counters that the phrase "likely to cause loss or impairment of consciousness or loss of ability to drive a school bus safely" modifies both "seizure disorders" and "another condition," and requires that the Department prove that a driver is physically incompetent at the time of recall.

The trial court accepted Chalfant's position, relying in part upon the following statement from our Supreme Court's opinion in *Commonwealth v. Rosenbloom Finance Corp.*, 457 Pa. 496, 500, 325 A.2d 907, 909 (1974): " 'When several words are followed by a [modifying phrase] which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the [modifying phrase] be read as applicable to all.' " (Citations omitted.) We must agree with the trial court that the language of the regulation demands such a construction.

The Department argues that 67 Pa.Code § 71.3(b) contains two groups of disqualifying medical conditions. The first group allows the Department to recall a license if a driver has or has had, at some time, a specified medical condition or clinical diagnosis. The second group deals with conditions which must be in existence at the time of the recall. The Department argues that condition (b)(10) is part of the first group. From our review of the regulatory language, we must disagree.

67 Pa.Code § 71.3(b) contains fifteen conditions to establish physical competency to drive a school bus. Seven of the conditions deal with established medical history or clini-

cal diagnosis of various ailments [3] including diabetes (condition (b)(4)), cardiovascular problems (conditions (b)(5), (6), (7)), respiratory dysfunction (condition (b)(8)), miscellaneous diseases (condition (b)(9)), and seizure disorders (condition (b)(10)). Of those seven, only one, (b)(5), is worded so that a history or diagnosis of the enumerated conditions *alone* will result in physical disqualification. Although the Department contended at oral argument that the fact that condition (b)(10) does not refer to a "current" condition is indicative of an intent to disqualify a driver solely because of a medical history or clinical diagnosis, we note that the remaining six conditions all contain some sort of qualifying language.

■ For example, while conditions (b)(4) and (7) refer to a "current" condition, conditions (b)(6) through (10) all operate to disqualify a person if he has certain symptoms associated with the medical condition or if the medical condition itself is "likely to" impair the driver's ability to operate a school bus safely. While the latter four do not

**3.** Those subsections provide that a person will be physically qualified if the person:

(4) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring use of insulin or other hypoglycemic medication.

(5) Has no established medical history or clinical diagnosis of myocardial infarcton [sic], angina pectoris, coronary insufficiency, or pacemaker insertion.

(6) Has no established medical history or clinical diagnosis of other cardiovascular disease resulting in syncope, dyspnea, loss or impairment of consciousness, collapse, or congestive cardiac failure.

(7) Has no current clinical diagnosis of hypertension resulting in syncope, dyspnea, loss or impairment of consciousness, collapse, or congestive cardiac failure.

(8) Has no established medical history or clinical diagnosis of a respiratory dysfunction likely to impair the ability to drive a school bus safely.

(9) Has no established medical history or clinical diagnosis of rheumatic, arthritic, orthopedic, muscular, neuromuscular, or vascular disease likely to impair the ability to drive a school bus safely.

(10) *Has no established medical history or clinical diagnosis of seizure disorders or another condition likely to cause loss or impairment of consciousness or loss of ability to drive a school bus safely.*

67 Pa.Code § 71.3(b)(4)–(10) (emphasis added).

specifically refer to a current condition, all involve an evaluation of the precise nature of a driver's condition as it relates to his fitness to serve as a school bus driver. In other words, the mere existence of the medical condition is not controlling; rather, the determinative factor is whether the medical condition is manifesting itself in such a way in the individual driver's case as to affect his ability to drive a school bus.

■ Comparing the language of condition (b)(10) with the language of the conditions which precede it further strengthens our conclusion that condition (b)(10)'s qualifying language is intended to modify both "seizure disorders" and "another condition." As the regulatory subsections (b)(4) through (10) are read in sequence, two different groups of conditions become apparent. Conditions (b)(4) through (7) are drafted so that certain medical conditions or diagnoses, accompanied by use of certain medication or enumerated symptoms, are disqualifying without regard to whether they presently affect driving ability. In contrast, the latter group, conditions (b)(8) through (10), all refer to conditions likely to affect a person's ability to drive a school bus.

We find it significant that condition (b)(10) falls at the end of this latter group. Had the Medical Advisory Board which drafted these regulations intended seizure disorders alone to be disqualifying, we would expect it to have used language similar to the first group. Other conditions likely to cause loss or impairment of consciousness which affect driving ability could then have been included with the second group. (As Chalfant's counsel noted at oral argument, if the qualifying language were to apply only to the latter portion of condition (b)(10), that language would constitute surplusage because of the language of 67 Pa. Code § 71.3(b)(15), which provides that a driver is physically qualified if he: "[h]as no other condition which in the opinion of the examining physician is likely to impair the ability to drive a school bus safely.")

Case law in this area is limited and will likely continue to be so in light of our decision in *In re Stober*, —— Pa.Commonwealth Ct. ——, 524 A.2d 535 (1987), *aff'd on reargument*, 119 Pa.Commonwealth Ct. 156, 546 A.2d 155 (1988).[4] However, we have previously addressed the question of the validity of the Department's regulations which disqualify a driver on the basis of a medical history or clinical diagnosis of myocardial infarction alone. *See Department of Transportation, Bureau of Traffic Safety v. Johnson*, 88 Pa. Commonwealth Ct. 248, 489 A.2d 960 (1985).[5] In *Johnson*, our Court *en banc* concluded that we should defer to the medical expertise of the Medical Advisory Board, which determined that it was in the best interest of the safety of our children to disqualify persons who had a history of myocardial infarction as school bus drivers. We chose not to second-guess that board regarding likelihood or severity of re-occurrence of heart or other medical problems, despite medical evidence in the record in that case that Johnson himself was in good physical condition and physically competent to operate a school bus.

We followed the *Johnson* rationale in *Department of Transportation, Bureau of Traffic Safety v. Spangenberg*, 103 Pa.Commonwealth Ct. 223, 519 A.2d 1118 (1987) (in which we reinstated the recall of Spangenberg's license because of a history of myocardial infarction), *Department of Transportation, Bureau of Traffic Safety v. Walko*, 97 Pa.Commonwealth Ct. 620, 510 A.2d 398 (1986) and *Department of Transportation, Bureau of Traffic Safety v. Miller*, 89 Pa.Commonwealth Ct. 232, 492 A.2d 121 (1985) (in both of which we held that a history of coronary insufficiency alone justified recall). All three of those cases were decided under the Department's previous regulations, which provided that the minimum requirements for passing a

4. In *Stober*, we determined that Section 504 of the Rehabilitation Act could be used as the basis for invalidating a regulation in a license recall case.

5. Although our decision in *Johnson* was handed down on March 19, 1985, and the current regulations took effect on May 11, 1985, the amended regulation regarding myocardial infarctions is substantially similar to that discussed in *Johnson*.

physical examination included: "(3) No established medical history or clinical diagnosis of: ... (ii) Myocardial infarction, angina pectoris, coronary insufficiency. (iii) Any other form of cardiovascular disease, including hypertension, with syncope, dyspnea, loss of consciousness, collapse or congestive failure." Former 67 Pa.Code § 71.3(3)(ii), (iii).

In *Walko*, we questioned the Department's broad reading of subsection (iii) which, the Department had argued, would disqualify any person with an established medical history of heart disease from operating a school bus. Although we ultimately decided *Walko* under subsection (ii) (history of coronary insufficiency), we noted that the regulation as amended, current 67 Pa.Code § 71.3(b)(6), "clarifies that it refers only to those forms of cardiovascular disease which result in 'syncope, dyspnea, loss or impairment of consciousness, collapse or congestive cardiac failure.'" *Walko*, 97 Pa.Commonwealth Ct. at 621 n. 1, 510 A.2d at 399 n. 1. While we recognize that this language is *dicta*, it nonetheless is evidence that we have recognized a distinction between those portions of the regulation which provide for recall of a license based on medical history alone and those which limit recall to specified conditions or symptoms associated with the various ailments enumerated.

Here, we are faced with the converse of the situation in *Johnson* and its progeny. The Medical Advisory Board, in drafting the regulation at issue, did not flatly state that one having a medical history or clinical diagnosis of a seizure disorder would be physically incompetent to serve as a school bus driver. Rather, the board saw fit to include qualifying language, which we may not ignore. Given our decision in *Johnson*, and the fact that these regulations were amended subsequent thereto, we must presume that the Medical Advisory Board knew how to draft a regulation absolutely disqualifying those with certain medical problems from operating a school bus. Because the regulation at issue is not such a regulation, we must hold that the Department was required to prove that Chalfant's seizure

disorder was likely to cause loss or impairment of consciousness or an inability to safely drive a school bus.

We must agree with the trial court that the Department has failed to meet its burden and, accordingly, will affirm that court's order sustaining Chalfant's appeal.

## ORDER

AND NOW, this 13th day of November, 1989, the order of the Court of Common Pleas of Fayette County in the above-captioned matter is hereby affirmed.

CRAIG, Judge, dissenting.

Under this court's established construction of the medical regulations governing eligibility for school bus driver licenses, appellee Chalfant's medical history of seizure disorder is disqualifying, even though there is no diagnosis that he is afflicted at present.

The pertinent regulation, 67 Pa.Code § 71.3(b)(10), sets forth two distinct qualifications pertinent to the class of potential disability present here. If a school bus driver license applicant is unable to meet either one of those qualifications, the applicant is ineligible for the license. A fair reading of the pertinent provision reveals the independent qualifications to be as follows:

A school bus driver's license applicant is qualified if the applicant—

[h]as no established medical history ... of seizure disorders or another condition likely to cause loss or impairment of consciousness or loss of ability to drive a school bus safely;

and

[h]as no ... clinical diagnosis of seizure disorders or another condition likely to cause loss or impairment of consciousness or loss of ability to drive a school bus safely. 67 Pa.Code § 71.3(b)(10)

The regulation does not require that there be a *current* "condition likely to cause loss or impairment of conscious-

ness or loss of ability to drive a school bus safely." It disqualifies if there is only a medical history of a seizure disorder or a medical history of another condition of the sort described.

There is no effective difference between the interpretation involved here and the similar interpretation this court adopted in *Department of Transportation, Bureau of Traffic Safety v. Walko*, 97 Pa.Commonwealth Ct. 620, 510 A.2d 398 (1986). In *Walko*, Judge Doyle's opinion confirmed that a history of coronary insufficiency is disqualifying, and that a current diagnosis of such a condition is not required to bar issuance of a license. *Walko* followed *Department of Transportation, Bureau of Traffic Safety v. Miller*, 89 Pa.Commonwealth Ct. 232, 492 A.2d 121 (1985), and *Department of Transportation, Bureau of Traffic Safety v. Johnson*, 88 Pa.Commonwealth Ct. 248, 489 A.2d 960 (1985). Although those cases dealt with cardiac illnesses, all of them confirmed the disqualifying effect of a medical history of such diseases, even when a current diagnosis of an active condition was absent.

The principle for interpreting the regulation involved in this case is no different. The regulation, which sets forth "medical history" in the alternative to "clinical diagnosis," does not require diagnosis of a present disability. The regulation clearly uses the descriptive phrases, relating to loss of consciousness or loss of driving ability, as equivalent to naming all disorders having those characteristics, whether or not characterized as "seizure disorders." The sentence indicates that an applicant is disqualified by a "medical history" of such alternatively described conditions, just as much as by a "medical history" of seizure disorders.

As this court stated in *Johnson*, we are compelled to defer to the expertise of the medical panel which promulgated the regulations. In the absence of contrary evidence, the courts are in no position to assume that even a remote medical history of a disabling condition is devoid of the possibility of a recurrence affecting safety. Here, as in *Johnson*, this court cannot adjudge the precautionary posi-

tion of the Medical Advisory Board to be unreasonable, arbitrary or capricious, when the board exercises its statutory power under 75 Pa.C.S. § 1517 to formulate regulations dealing with the special problem of school bus safety affecting children.

Therefore, because this case does not present the entirely separate approach which is possible by invoking section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794, the trial court's decision should be reversed and the action of the department upheld as being in accordance with the regulations and the statute.